**In re George S. RUSH, d/b/a Rush Engineers, Debtor.**

**Bankruptcy No. 80–04078.**

United States Bankruptcy Court,
N. D. Alabama.

Oct. 27, 1980.

---

Thomas J. Knight, Anniston, Ala., for debtor.

David B. Anderson, Birmingham, Ala., for petitioning creditors.

## ORDER ON MOTION FOR APPOINT-MENT OF INTERIM TRUSTEE AND ON RELATED MATTERS

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

In the above-styled involuntary case, filed and pending under Section 303 and Chapter 7, Title 11, United States Code, an order was entered by the Court on October 7, 1980, providing, *inter alia*, that a continued hearing be held before the Court at Anniston, Alabama, on October 16, 1980, at 9:00 o'clock a. m., upon the motion by the petitioning creditors for the Court to direct the United States trustee to appoint an interim trustee to take possession of the property of the estate and to operate any business of the debtor, as provided for in Section 15303 of Title 11, and it was understood by counsel for the parties and by the Court that the hearing would be devoted principally to the presentation of evidence by the parties and consideration of the evidence by the Court, as necessary to a determination of whether the motion should be granted or denied. In preparation for said hearing, petitioners' counsel had given notice of their intention to take the deposition of the debtor, George S. Rush, at Anniston, Alabama, on October 10, 1980, at 10:00 a. m. On October 9, 1980, counsel for the debtor filed a motion for an order delaying or prohibiting the taking of the deposition. On the morning of October 10, 1980, but after 10:00 o'clock a. m., counsel for the petitioners filed a motion for sanctions against the debtor, on the ground that the debtor had failed or refused to appear for the taking of the deposition. The motion sought to have the Court order that all contested or disputed facts set forth in a stipulation of undisputed and of disputed facts which the Court had directed counsel for the parties to file by October 14, 1980, be deemed admitted, unless the debtor appeared at the appointed place for the taking of his deposition, on Saturday, October 11, 1980. Without objection, the motion was heard, forthwith, by the Court, with counsel for the petitioners and counsel for the debtor present. Likewise and at the same time, the Court heard the debtor's motion for a protective order with regard to the taking of the deposition and a motion by the debtor for sanctions against The Home Insurance Company, a petitioning creditor, concerning a discovery procedure alleged to have been sought by the debtor.

At the conclusion of the hearing on October 10, 1980, the Court denied the two motions by the debtor and granted the motion by the petitioning creditors, to the extent of directing the debtor to be deposed on Saturday, October 11, 1980, at 10:00 o'clock a. m., or be considered to have confessed, and to have agreed to, the motion for the Court to direct the United States trustee to appoint an interim trustee in this case, all as embodied in an order entered in this case on October 10, 1980.

On October 14, 1980, counsel for the petitioning creditors filed a motion which alleged that the debtor, on October 11, 1980, again failed to appear for the taking of his deposition and which requested that the Court enter the order for the appointment of an interim trustee, in accordance with their prior motion and said order of October 10, 1980. In response, one of the attorneys for the debtor filed a five-page affidavit,

detailing his unsuccessful efforts to communicate to the debtor until the afternoon of October 11, 1980, the provision of the Court's order of the previous day.

A hearing was then set and conducted by the Court, on the afternoon of Wednesday, October 15, 1980, upon the petitioners' motion for the Court to enter the order directing the United States trustee to appoint an interim trustee in this case. In the course of the hearing, the debtor was orally examined under oath by his counsel and by counsel for the petitioning creditors; and the bankruptcy judge found from the affidavit of the debtor's attorney, which was not contradicted, and from the testimony of the debtor that the debtor's attorney, upon filing the motion for a protective order, had advised the debtor that he would not be required to be deposed on October 10, 1980, that the debtor had then left Anniston and did not return until around midnight, that the debtor's attorney had made every reasonable effort to convey to the debtor the contents of the Court's order of October 10, 1980, and that counsel for the petitioning creditors and their retained court reporter had dispersed and declined to proceed with the deposition by the time that the debtor's attorney was able to contact the debtor; and the Court concluded and announced in open court that the debtor's attorney was in error in advising the debtor that it would not be necessary for the debtor to attend upon the taking of his deposition on October 10, 1980, that the granting of the petitioners' motion, as in a case of default, was an inappropriate sanction, that the order of October 10, 1980, was modified in this regard, that the debtor was directed to appear for his deposition at 7:45 p. m. on October 15, 1980, and proceed with the deposition until 10:00 p. m., with the deposition to be resumed and concluded the next morning, beginning at 8:00 o'clock a. m., if not concluded the previous evening, and directed to pay damages of $1,000.00 to the petitioning creditors, incurred on account of the debtor's failure to be deposed on October 10, 1980, that the hearing on the motion for the appointment of an interim trustee, due to be heard on October 16, 1980, commencing at 9:00 o'clock a. m., was continued to the time of the conclusion of the taking of the deposition, if the deposition was not completed before 9:00 o'clock a. m. on that day, but that the order of October 10, 1980, would be reinstated and the motion to enter an order for the appointment of an interim trustee would be granted if the debtor failed to comply with these directions of the Court. These directions of the Court having now been fully complied with by the debtor, the Court finds no need to enter a formal order in this regard, except that, it is ORDERED by the Court that the motion by the petitioning creditors for the Court to enter an order granting their previous motion for the appointment of an interim trustee, without a hearing on the latter motion, was, and is, denied.

Shortly before noon on Thursday, October 16, 1980, the Court proceeded with the continued hearing upon the motion by the petitioning creditors that the Court direct the United States trustee to appoint an interim trustee in this case, with the debtor, counsel for the debtor, counsel for the petitioning creditors, counsel for the United States of America (United States Army Corps of Engineers), counsel for Transamerica Insurance Company, and various witnesses present and participating. At the commencement of the hearing, the Court also heard separate motions by Transamerica Insurance Company and the United States of America for leave to intervene in the proceedings on the motion for the appointment of an interim trustee, in order to oppose the granting of that motion; whereupon, the Court ordered, in open court, that the motions be taken under advisement but that these parties be allowed to participate in the hearing pending the Court's decision on the motions to intervene. These parties having participated in the hearing and the Court having ruled upon the motion by the petitioning creditors, it appears to the Court that the motions to intervene are rendered moot, except in the event of an appeal of the Court's ruling, and it is ORDERED by the Court that the motions to intervene are held under advisement by the

Court but shall stand denied in the event that no appeal is taken from the Court's ruling.

At the conclusion of the presentation of the evidence presented on behalf of the petitioning creditors, counsel for the petitioning creditors requested leave further to amend their motion; whereupon, the Court instructed counsel for the petitioning creditors to state the allegations which would be added by such an amendment, counsel complied, and the Court ordered that the motion stand amended to include the allegations stated by counsel for the petitioning creditors. Without proceeding to offer evidence in opposition to the motion, counsel for the debtor requested that the Court rule upon a motion filed by the debtor to dismiss the motion of the petitioning creditors as not being sustained by its allegations and the evidence presented in support thereof. After hearing and considering the arguments of counsel and considering the motions and evidence, the bankruptcy judge found that the motion for the appointment of an interim trustee was not well taken and that it should be denied, and an oral order to this effect was announced in open court, and the hearing was thus concluded.

### FINDINGS OF FACT

From the stipulation between counsel for the petitioning creditors and counsel for the debtor, being in the form of a memorandum on the stationery of Cabaniss et al., Esquires, to Thomas Knight, Esquire, dated October 7, 1980, and filed in this case on October 14, 1980, and the admissible evidence presented to the Court at the hearing on the motion for the appointment of an interim trustee, the bankruptcy judge finds the following facts:

1. George Rush (hereinafter referred to as "the debtor") is an individual who, for many years, has engaged in the business of contractor for public construction projects and of buying and selling property, mainly real property;

2. The debtor has maintained his place of residence and principal place of business at Anniston, Alabama, at least until approximately eight months ago, when, according to his claim, he moved his place of residence approximately 300 miles to the south at Destin, Florida;

3. The debtor's participation in the public construction business has been under the trade name of "Rush Engineers" or through a corporation organized by him and called "Rush Engineers, Inc.", except that, recently (since this involuntary bankruptcy case was filed, on July 31, 1980), the debtor has been a salaried employee, supervising some construction work, for Rush Engineers International, Inc., in which the debtor owns no interest:

4. Rush Engineers, Inc., was organized two to three years ago, had no substantial capital until about June 1980, is owned by the debtor and his three children (with the debtor owning the controlling interest), is performing (as if prime contractor) ten public construction contracts under an agreement with the debtor (who is, in fact, the prime contractor), and has one public construction contract in its own name;

5. Two prior employees of the debtor, having discretion to act in management matters, changed their employment (about June 1980) to Rush Engineers, Inc., and this corporation pays a monthly rental of $5,800.00, on a $150,000.00 airplane, for use of the debtor or for use at his direction;

6. On November 30, 1979, the debtor transferred to Choccolocco Farms, Inc., a corporation organized by the debtor and owned by his children, a farm of 418 acres, having a present market value of approximately $460,000.00, to provide for the education of the debtor's three children, which the debtor is obligated to provide by the terms of a divorce decree;

7. Within the past year, the debtor transferred a parcel, known as "The Tenth Street Building" for the benefit of his principal attorney, in consideration of "present and future attorney's fees" (the value of this property not being established, but the debtor's investment in it being $75,000.00–$80,000.00);

8. Within the past year, the debtor has transferred property of substantial value to corporations whose stock was owned by the debtor (without other consideration); one such transfer was a transfer of a condominium property (having a market value of $1,200,000.00 and an indebtedness against it of $150,000.00) to "Lest-tern"; and this corporation owns a yacht (purchased and transferred to it by the debtor) which has a market value of $145,000.00 and which is used at the direction of the debtor;

9. "Lest-tern" is engaged in the business of "investments" (buying and selling property) and has as its president, Dave Shelby, who is the debtor's supervisor with Rush Engineers International, Inc.;

10. "Sand Piper Development" is a trade name under which the debtor was engaged in some "construction" business, but he ceased this work when the bankruptcy case was filed;

11. Of the ten public construction contracts being performed for the debtor (the prime contractor) by Rush Engineers, Inc., the largest is on Eglin Air Force Base at Fort Walton Beach, Florida, (near Destin, Florida), and this contract is about 25% completed;

12. The United States of America (United States Army Corps of Engineers) is the property owner on the debtor's contract at Eglin Air Force Base and on a contract with the debtor at Redstone Arsenal, Huntsville, Alabama, and the Government is very much opposed to the appointment of an interim trustee in this case, for fear of a resultant costly interruption in the work under these contracts;

13. The total dollar amount of the public construction contracts of the debtor or of Rush Engineers, Inc., now being performed by the latter, is approximately $15,000,000.00;

14. The debtor's last audited financial statement is dated December 31, 1978, an audit of the debtor's financial records for the year 1979 has not yet been completed, and the debtor attributes this to delays caused by the disruption of his business files because of law suits;

15. The debtor has not filed federal or state tax returns for the year 1979 but claims to have sought extensions of time for doing so;

16. An insurance company has obtained against the debtor, on a claim for insurance premiums, a judgment in the sum of $175,732.90, but the debtor has taken an appeal from the judgment;

17. From about 1965 to about 1967, the debtor procured from a predecessor of Home Insurance Company (one of the petitioning creditors) the bonds required for the debtor's participation in the public construction business, and this relationship was resumed about the year 1975 and continued until 1977, when the insurance company ceased to engage in the bonding business; whereupon, the debtor established a similar business relationship with Transamerica Insurance Company;

18. Before cessation of its bonding business, Home Insurance Company became surety for the debtor on bonds required for four public construction projects in the State of Tennessee and one at Anniston, Alabama; during the last five months of 1979, claims against the debtor by subcontractors and suppliers for nonpayment increased from a few claims to more than fifty claims; and beginning in March 1980, the debtor ceased performance (directly or indirectly) with regard to the construction project at Anniston and three of the construction projects in Tennessee;

19. Home Insurance Company executed the bonds with the debtor under an agreement whereby the debtor promised to indemnify it against all demands and losses; during the last five months of 1979, Home Insurance Company called on the debtor to defend several actions brought against them by subcontractors and suppliers; the debtor retained a lawyer at Knoxville, Tennessee, to defend these cases; and the attorney is presently defending for the debtor and this company about twenty-five cases, in the State court in Anderson County, Tennessee, seeking the establishment of liens;

20. Numerous requests from Home Insurance Company to the debtor's lawyer at Anniston, for information on claims related to contracts under bond with this company were not directly responded to; however, the debtor's attorney at Knoxville has undertaken to investigate all such claims called to his attention and to advise the insurance company concerning same;

21. This attorney has had full cooperation from Rush Engineers, Inc., in handling these matters but has had difficulty in instances where the debtor did not have full knowledge as to the information sought from him by certain claimants, and in one case in a United States District Court the attorney applied for leave to withdraw as counsel for this debtor, but this litigation was a suit which Home Insurance Company brought against the debtor and the owner of the construction project;

22. Notwithstanding that claims of subcontractors and suppliers were due to be paid by the debtor within five days from receipt of available funds under the construction contracts, the debtor has withheld delivery of various checks to pay claims, because of a disagreement as to the amount claimed or because of the debtor's shortage of funds;

23. The relationship between the debtor and Home Insurance Company is marked by animosity and charges and countercharges of misconduct in relation to each other, with the debtor claiming obstructionism and undue interference by the insurance company and with the insurance company claiming false representations, failure to perform contractual duties under various public construction projects, and an absence of promised cooperation by the debtor, and their relationship has deteriorated to the point where on one project the insurance company has brought the above-mentioned suit against the debtor and the owner of the project;

24. Transamerica Insurance Company has not suffered a loss on any claim against the debtor; it strongly opposes the appointment of an interim trustee for the debtor's estate and businesses; it, in the opinion of the person who supervises its business with the debtor, will not have to pay out any money on the claims against the debtor of which it has notice; and this officer or employee is of the opinion that the status reports which it has received on the construction projects wherein it has executed the debtor's bonds show that all of these projects are proceeding satisfactorily, with no claim file having been established by it on either the "Eglin" or "Redstone" project;

25. Transamerica executed the debtor's bid bond of approximately $800,000.00 on the Eglin Air Force Base project; but this company required security for indemnity on some of the bonds which it executed for the debtor, including a mortgage in the sum of $500,000.00 on certain of the debtor's property (probably the "Downtowner" motel at Anniston); it requested an account deposit of $200,000.00 under another agreement proposed with the debtor but which was not finalized; and, while this company has not "cut off" the debtor's bonding line, the debtor has not requested any bond from this company since the "Eglin" job; and

26. Each bonding company has sent examiners into the debtor's business office to investigate his financial affairs since the date of the debtor's last financial statement (December 30, 1978); those from Transamerica Insurance Company spent about two weeks making an investigation; but that occurred prior to the execution of the bid bond for the Eglin Air Force Base project.

## CONCLUSIONS BY THE COURT

It is the conclusion of the Court that the facts established in this case do not establish that the appointment of an interim trustee by the United States trustee (under Section 15701 of Title 11) is, in the words of the statute (Section 15303 of Title 11), "necessary to preserve the property of the estate or to prevent loss to the estate", and the requested order that the United States trustee do so will not issue at this time.

In a case in which the contested bankruptcy petition is to be heard and de-

termined within a short time after the hearing on a motion that an interim trustee be appointed, the request for the trustee should not be granted in the absence of an exceptionally strong need for doing so. A determination of the main question (whether to enter an order for relief on the bankruptcy petition) would eliminate any need for the Court to order that an interim trustee be appointed. If the petition is denied, the case would be dismissed, or if granted, the United States trustee, under Section 15701 of Title 11, would appoint, or would serve as, interim trustee.[1]

In the case before the Court, however, due to the amount of time represented by counsel as necessary to prepare for trial, a pre-trial conference will not be held until November 13, 1980, and the trial of the contested petition will not commence until December 11, 1980. The lapse of time in this case, before a resolution of the question of whether the debtor's estate is to be liquidated, will be substantial, and protection of the debtor's estate in the meantime is a valid concern, requiring serious consideration of allegations by the petitioning creditors that an interim trustee is necessary to preserve property or to prevent loss.

In any involuntary liquidation case, the ultimate decision that the debtor retain the management and control of property and the payment of debts or that these functions be taken over by a liquidating trustee constitutes a life or death decision on the present financial life of the debtor, and a decision on the appointment of an interim trustee cannot be divorced from the impending decision on that question. If the request for an interim trustee is denied it seems a reasonable speculation to anticipate that a future liquidation of the debtor's estate will produce less money to pay on creditors' claims. It is difficult to believe that leaving the debtor in control would ultimately benefit or not harm the creditors, if the petitioners are successful later in proving that "the debtor is generally not paying such debtor's debts as such debts become due"[2] and in obtaining an "order for relief" upon their petition.

On the other side, the disruption to the financial life of a debtor by the appointment of an interim trustee could well leave the financial life of the debtor scarred and crippled beyond any real chance for recovery, although the debtor were victorious in resisting the involuntary petition. Again, it appears a reasonable speculation to anticipate that the effect on the debtor's future financial life in such case will be neither neutral nor beneficial, if an interim trustee takes possession of the property of the estate and assumes operation of any business of the debtor, as stated in Section 15303.[3]

The impact upon the debtor of the appointment of an interim trustee, where the relief sought by the involuntary liquidation petition is ultimately refused, will have its most common measurement in the nature of the debtor's property or business or both. If a debtor's property consists mainly of stable, long-term investments and the debtor has only a small, or no, business, the impact might be predicted to be slight; but, in such case, the need for an interim trustee probably would also be slight, except to prevent a concealment of assets or a conversion to other types of assets and a waste of such assets. If the property consisted mainly of volatile commodity investments the impact could be very great. If the debtor has one or more businesses of considerable size and if the debtor is an individual personally involved in one or more of them, these are two factors indicating that the impact of the appointment of an interim trustee upon the debtor's future financial life would be considerable and that none should be appointed except upon a clear showing of the necessity for doing so.

The statute[4] speaks of the need for appointing an interim trustee in terms of "if

---

1. See 11 U.S.C. § 701(a), regarding cases in districts not having United States trustees.

2. 11 U.S.C. § 303(h)(2).

3. See 11 U.S.C. § 303(g), regarding cases in districts not having United States trustee.

4. 11 U.S.C. § 15303 or § 303(g).

necessary". In the case before the Court, the requisite necessity was not established by the evidence.

The evidence showed a debtor with considerable investments, mainly in real property or in stocks of closely-held or individually-owned corporations, owning mostly real property. It showed a debtor with a large public construction business, in which the debtor had a considerable personal involvement. The debtor's personal involvement did not appear to have lessened significantly in recent months, despite steps on his part (since his dispute with Home Insurance Company) to place some insulation between the public construction business and himself. A transfer almost a year ago of a very valuable asset (the farm) to a corporation to provide for the education of the debtor's three children is not an unreasonable or unusual step for a person in this debtor's circumstances to take. If a disapproving view is taken of this transfer, the appointment of an interim trustee would not, in itself, repair the damage. Such a transfer, occurring almost a year ago, would not be a sufficient basis for concluding that the debtor is presently disposing of property of the estate to the detriment of the creditors.

The evidence very clearly indicated that the appointment of an interim trustee would have a disastrous effect on the debtor's public construction business and would cause, not prevent, loss to the estate. Thus, in this particular case, the result would be detrimental both to debtor and to creditors. The appointment of an interim trustee is a matter which rests upon an inherent requirement that it be of prospective benefit to creditors, in the event of entry of an order for liquidation of the debtor's estate. Here there is no clear showing that this would be so.

Counsel for the petitioning creditors conceded, in effect, that the appointment of an interim trustee would damage the debtor's public construction business, by statements during the hearings that only a limited trustee was sought. This led to a motion on behalf of the debtor to require a specific statement of the duties of the trustee being sought. After the Court expressed doubt that the bankruptcy law authorized a "limited" trustee,[5] this position finally was abandoned, and debtor's counsel moved to withdraw the motion for the petitioners to specify the duties of the trustee sought.

When an interim trustee is requested, the nature of the matter requires that the hearing and the decision of the Court be proceeded with to a conclusion, on an expedited and priority basis. If the circumstances of the debtor dictate that an interim trustee take possession of the debtor's property and operate any business of the debtor, the creditors stand to be increasingly injured by the lapse of time, if relief under Chapter 7 is finally ordered by the Court.

Delay in resolution of the question of whether an interim trustee will be appointed also has the potential for serious injury to the debtor, for this hanging question tends to paralyze financial and business decisions and actions by the debtor. Thus, the Court has exercised a deliberate impatience in this matter, when apparent unwarranted delay has been injected into it by first one side and then the other.

The parties and their counsel are requested to take note that much of what has just been said applies equally well to the ultimate resolution of the main issue in this case of whether the Court will grant relief under Chapter 7 of the Bankruptcy Code to the petitioners.

## ORDER OF THE COURT

For good cause, it is ORDERED by the Court that the debtor's motion to require the petitioning creditors to specify the duties of the trustee being sought is withdrawn and that the motion by the petitioning creditors for the Court to direct the United States trustee to appoint, or serve as, an interim trustee in this case is denied.

5. See 11 U.S.C. § 701(c).