**In re Del H. REED, Jr., Alleged Debtor.**

**Bankruptcy No. 80–20226.**

United States Bankruptcy Court,
S. D. West Virginia.

April 23, 1981.

William W. Pepper, Charleston, W. Va., for Del H. Reed, Jr., alleged debtor.

John N. Charnock, Jr., Charleston, W. Va., for petitioners.

## MEMORANDUM OF OPINION

EDWIN F. FLOWERS, Bankruptcy Judge.

Del H. Reed, Jr., contests a petition filed by three of his creditors seeking an involuntary order for relief against him under chapter 7 of the Bankruptcy Code. The Petitioners, who hold judgments against the alleged debtor [hereinafter Debtor] in excess of $92,000.00, allege that he is generally not paying his debts as they become due, within the meaning of 11 U.S.C. § 303(h)(1). Reed acknowledges the indebtedness and even concedes that he may not be generally paying his debts, but contends that relief should be denied the Petitioners for equitable considerations. His financial difficulties allegedly began when he and the auditor of the state's largest bank married, within the span of a week, each other's former wife. The Debtor believes that his former wife and her banker husband have pursued a course of conduct designed to ruin him financially. Convinced of a conspiracy, Reed counterclaimed, charging that the Petitioners, one of which is another bank in this community, have acted maliciously and in bad faith in filing the petition, and seeking compensatory damages of $50,000.00, punitive damages and dismissal of the petition.

### Procedural Matters

A hearing on the involuntary petition was held pursuant to Rule 115(a), Rules of Bankruptcy Procedure, at which time the Court considered related motions which had been filed by the Petitioners and the alleged debtor, Reed.

The Petitioners sought the appointment of an interim trustee pending a hearing on the merits of the petition. Reed asked that an indemnity bond be posted to assure payment of all costs and damages generated by his defense against the involuntary petition. Both applications were denied by the Court at the hearing. Although the record reflects the Court's ruling, it will be reiterated here for the benefit of other parties who may be faced with these matters.

■ The Bankruptcy Code provides for the appointment of an interim trustee after the commencement of an involuntary case under chapter 7 "if necessary to preserve the property of the estate or to prevent loss to the estate." 11 U.S.C. § 303(g) (1978). However, in this case, no facts were alleged in the application showing the necessity for the appointment of an interim trustee, as required by Suggested Interim Rule 2001(b). See 6 Collier on Bankruptcy Form No. 1–206 (15th ed. 1980). Inasmuch as Rule 115(a) of the Rules of Bankruptcy Procedure requires a determination on a contested petition "at the earliest practicable time," an interim trustee will not be appointed by the Court unless irreparable harm to the estate is likely to result between the time of the filing of the petition and the scheduled hearing.

■ The Court is of the opinion that a bond should not routinely be required of petitioners on request of a debtor. The Bankruptcy Code does not impose a mandatory bond requirement.

After notice and a hearing, and for cause, the court may require the petitioners under this section to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section. [11 U.S.C. § 303(e) (1978)].

Subsection (i) exposes petitioners to liability for costs and the alleged debtor's attorney fees if their petition is dismissed. However, they are not liable for damages unless a trustee is appointed or they are found to have filed in bad faith. 11 U.S.C. § 303(i) (1978). The bonding requirement is designed to "discourage frivolous petitions as well as the more dangerous spiteful petitions, based on a desire to embarrass the debtor ... or to put the debtor out of business without good cause ...." H.R. Rep.No.95–595, 95th Cong., 1st Sess. 323 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, ——. The Petitioners here are all business entities which could respond to an award of damages made against them. Moreover, they are not likely to be deterred in their choice of an involuntary petition

against this Debtor by the requirement of a bond. Therefore, no cause having been demonstrated by the Debtor, bond is unnecessary in this case.

■ In response to the involuntary petition, Reed filed two separate motions to dismiss. One motion is based upon the ground that the Debtor is an "individual with regular income." Reed contends that he meets the definition of 11 U.S.C. § 101(24), making him eligible for relief under chapter 13; therefore, since an involuntary case may only be commenced under chapters 7 or 11, he may not be subjected to an involuntary petition. The Bankruptcy Code provides otherwise. Section 303(a) authorizes the filing of an involuntary petition against a person, other than a farmer, or against a corporation, other than a moneyed, business or commercial corporation, that could be a debtor under the chapter which the petitioners have selected, either chapter 7 or chapter 11. 11 U.S.C. § 109(b), which designates what persons or entities are eligible for relief under each chapter, excludes only railroads, domestic or foreign insurance companies, and financial institutions from eligibility under chapter 7. It does not exclude those persons who are eligible for relief under another chapter. Therefore, the fact that the Debtor may be eligible for chapter 13 relief does not protect him from the filing of a chapter 7 involuntary petition.

■ The Debtor also contends that the case must be dismissed because Del Reed, Inc., is an indispensable party. The specific eligibility requirements for bankruptcy relief found in title 11 of the United States Code preempt the Federal Rules of Civil Procedure on joinder of parties. Though the financial affairs of the Debtor are intertwined with a corporation, even if the civil rules applied, the joinder of the corporation is not necessary for a just adjudication on the involuntary petition against Reed personally. This, of course, does not preclude the filing of a voluntary petition by Del Reed, Inc.

## The Involuntary Petition

■ The Petitioners in this case are Peerless Block Company, Mutual Collection Agency, an assignee of Dunbar Sash & Window, and the Chemical Bank and Trust Company. The Petitioners hold the following recorded judgments against the Debtor:

| | | |
|---|---|---|
| Peerless Block | $ 3,194.82 | Entered November 1, 1978 |
| Mutual Collection | 975.34 | Entered January 18, 1979 |
| Chemical Bank & Trust | 3,989.90 | Entered March 21, 1980 |
| Chemical Bank & Trust | 84,305.43 | Entered April 11, 1980 |

The Bankruptcy Code requires the balancing of lien claims against the value of the real estate in order to determine whether the petitioning creditors hold claims of at least $5,000.00 which are not secured.

An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[.] [11 U.S.C. § 303(b)(1).]

The Debtor owns real estate against which the recorded judgments held by the Petitioners became liens. See W.Va.Code § 38–3–6 (1966). He testified that his residence at 908 Echo Road was worth between $69,000.00 and $72,000.00. The evidence indicates a first mortgage against the property with a principal balance due on the trial date of $46,971.83, and delinquent interest, late charges and escrow deficiency of $5,707.33. A potential equity of $19,320.84 thus exists in the property. To this amount may be added the value of an unimproved lot in Woodcliffe Addition having a value of $3,500.00 to $6,000.00. The net value of these two properties, against which the judgments of the Petitioners would be satisfied, amounts to a maximum of $25,320.84. Since the judgment liens held by the Petitioners total $92,465.49, the unsecured portion of their claims exceed by a wide mar-

gin the $5,000.00 required to file this petition. Adjusting the accrued interest on the first mortgage back to the date of the petition or accounting for the undivided one-half interest of the Debtor's former wife in the residence property would not significantly alter this result. Thus, the requirements of section 303(b) are met by the Petitioners.

Adjudicating the merits of the petition requires a determination of whether the Debtor is generally not paying his debts as they become due:

> If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if— (1) the debtor is generally not paying such debtor's debts as such debts become due; or (2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession. [11 U.S.C. § 303(h) (1978).]

The Debtor in this case is a young building contractor and developer who is currently earning his living as a licensed real estate broker. His income in 1980 was approximately $18,000.00, while his current indebtedness exceeds $100,000.00:

| | |
|---|---:|
| Charleston Federal Savings & Loan, principal balance January 28, 1981 | $ 46,971.83 |
| delinquent interest, late charges, escrow deficiency | 5,707.33 |
| no payments since March, 1980 | |
| City of South Charleston, sewer lien recorded January 20, 1977 | 70.22 |
| Peerless Block Company judgment entered November 1, 1978 | 3,194.82 |
| Kanawha Valley Adjustments, Inc. judgment entered November 18, 1978 | 66.38 |
| Mutual Collection Agency · judgment entered January 18, 1979 | 975.34 |
| Hugh G., Jr., and Mary K. Thompson, judgment entered February 21, 1979 | 9,168.08 |
| First National Bank of South Charleston, no judgment but delinquent since June, 1979 | 3,500.00 |
| Trojan Steel Company, judgment entered June 22, 1979 | 727.42 |
| Joyce Catherine Reed Ciliberti, judgment entered August 16, 1979 | 323.75 |
| City of South Charleston, sewer lien recorded September 4, 1979 | 97.11 |
| Chemical Bank & Trust Company, judgment entered March 21, 1980 | 3,989.90 |
| Chemical Bank & Trust Company, judgment entered April 11, 1980 | 84,305.43 |
| Rhodes Brick & Supply Company, judgment entered April 18, 1980 | 2,627.26 |
| Chemical Bank & Trust, balance, secured by 1977 Ford pickup truck (repossessed subsequent to the petition and sold at a deficit of $1,000 to $1,500.00) | 3,000.00 |
| Total Indebtedness | $ 164,724.87 |
| Less · long-term portion of debt to Charleston Federal | 46,971.83 |
| Net Current Indebtedness | $ 117,753.04 |

The amount of indebtedness, however, is not the only factor in determining whether a debtor is generally not paying debts as they become due.

Although the precise scope and meaning assigned to the term of "generally not paying" are left to the courts, it is clear that a court must find more than a prospective inability by the debtor to pay only a few of his debts, and more than a past failure to pay a few of such liabilities. It is doubtless intended that a court should properly consider both the number and amount in determining whether the inability or failure to pay is in fact, "general." [2 *Collier on Bankruptcy* ¶ 303.-11[1] at 303–28 (15th ed. 1980), citing to *Report of the Commission on the Bankruptcy Laws of the United States*, Part II at 75 (1973)].

It is clear from the reported cases interpreting section 303(h) that a purely mechanical test will not reveal whether a debtor is generally not paying his debts. Courts have used four factors in making this determination: the number of debts, the amount

of delinquency, the materiality of nonpayment and the nature of the debtor's conduct of his financial affairs.

■ A debtor must neglect more than one debt for the nonpayment to be general, unless there are exceptional circumstances. *See In re 7H Land & Cattle Co.,* 6 B.C.D. 572, 6 B.R. 29 (Bkrtcy., D.Nev.1980). Ordinarily, for the number of debts to have any significance in the determination, the number not paid each month must be compared to the number which were paid. The ratio of unpaid to accruing debts is more revealing than a simple count of unsatisfied creditors.

■ Without ascertaining dollar amounts, however, the ratio of unpaid to accruing debts does not supply very useful data. The size of the debts, separately and in the aggregate, must be examined to determine whether a seemingly high number of unsatisfied claims are *de minimis* in amount. Moreover, total past due indebtedness can be weighed more accurately when the debtor's liquid assets are known and when the past due amount is compared to the amount of new indebtedness accruing monthly. Accordingly, the initial factors of the number and amount of debts and their relationship to aggregate indebtedness and monthly accruals should be viewed in the context of the debtor's liquidity. *See In re All Media Properties, Inc.,* 6 B.C.D. 586, 5 B.R. 126 (Bkrtcy., S.D.Tex.1980); *In re Hill,* 6 B.C.D. 659, 5 B.R. 79 (Bkrtcy., D.Minn. 1980); *In re Luftek, Inc.,* 6 B.C.D. 1083, 6 B.R. 539 (Bkrtcy., E.D.N.Y.1980); *In re Chong,* 6 B.C.D. 865 (Bkrtcy., D.Hawaii 1980); *In re Kreidler Import Corporation,* 6 B.C.D. 608, 4 B.R. 256 (Bkrtcy., D.Md.1980).

Apart from the number of debts and their amount, the court must consider the materiality of the nonpayment of debts. A default of short duration should be viewed differently than one which is longer. Obviously, even a substantial amount of indebtedness which is only thirty-one days past due should be viewed differently from the same group of debts which are ninety days old. *In re Trans-High Corporation,* 6

B.C.D. 213, 3 B.R. 1 (Bkrtcy., S.D.N.Y.1980). Further, the debts should be examined to determine whether there is any reasonable basis for nonpayment. Either a bona fide dispute or commercial practice might not only explain, but in fact fully justify the debtor's failure to pay. *In re All-Media Properties, Inc., supra.*

■ Finally, the factors of number, amount and materiality of non-payment must be viewed in the context of the debtor's overall handling of his financial affairs. If the debtor is winding up his business or personal affairs, selling assets in a liquidating fashion, paying only nondischargeable or co-obligor debts, kiting checks, or otherwise is conducting his financial affairs in a manner not consistent with one operating in good faith and in the regular course of business, then the interpretation of nonpayment could be quite different.

■ Applying these standards to Reed's situation leaves little doubt that he is generally not paying his debts as they become due. Reed owes fourteen creditors and is delinquent on each debt. He is paying only modest household expenses of $700.00 to $800.00 per month. Total past due debts amount to $117,753.04, while his liquid assets are admittedly insufficient to pay any amount now to these creditors. His current income of $400.00 to $500.00 per month is not likely to produce the estimated $18,-000.00 he earned last year. Even if his previous year's income was matched by his current earnings, the delinquent portion of his indebtedness is more than six times those earnings. He has no personal financial net worth. His hope for financial relief lies only in a substantial recovery from two law suits filed by a corporation, fifty percent of which he owns, and in a $300,000.00 line of credit, which has been rejected by his bank, one of the Petitioners here. His debts range in size from two of less than $100.00 to one over $84,000.00. Of the fourteen debts, none were current at the time of the petition. As of the filing date, the

debts were from four to thirty-two months delinquent.

| Number of Creditors | Months Delinquent | Amount Delinquent |
|---|---|---|
| 3 | 4 | $ 89,932.69 |
| 2 | 5 | 6,843.57* |
| 1 | 11 | 97.11 |
| 1 | 12 | 323.75 |
| 2 | 14 | 4,227.42 |
| 1 | 18 | 9,168.08 |
| 1 | 19 | 975.34 |
| 2 | 21 | 3,261.20 |
| 1 | 32 | 70.22 |
| 14 | | $ 114,899.38 |

The only debt for which any credible explanation of default was given was the first mortgage delinquency to Charleston Federal Savings & Loan. Reed had forestalled foreclosure against the collateral once before and foreclosure was halted voluntarily on the most recent occasion upon the filing of this petition. The Debtor explains that, since his former wife owns an undivided one-half interest in the mortgaged property and this interest has been the object of both negotiation and litigation between them, he would not make further payments to improve her equity in the property. However, his defense for nonpayment of some of the debts because they were also debts of certain of his corporations is inadequate. These debts are also his personal debts by recordation of judgments, though he might have hoped to satisfy them otherwise. Moreover, while his debts were accumulating, the Debtor made an undisclosed transfer of unencumbered real estate to his present wife. She in turn purportedly transferred this property to the attorney brother of the Debtor three months prior to the filing of this petition. During the time Reed's personal debts were accumulating two of his corporations became insolvent; he is now operating through a third one. Finally, the Debtor has defaulted on four agreements to purchase his former wife's interest in his residence. This related conduct of the Debtor certainly does not put his creditors at ease.

* The delinquent portion of the Charleston Federal debt as of the date of trial was reduced here

The Debtor rather vehemently insists that his financial distress is the result of the malicious actions of the Petitioners, who are accused of filing this petition in bad faith and for purposes "inconsistent with the intent and spirit of the bankruptcy laws." Counterclaim, ¶ 5.

Conceivably, a debtor who is the victim of a malicious conspiracy by his creditors might be spared the consequences of their improper acts. General equitable principles applicable to bankruptcy matters would bar relief to those who come to court with unclean hands. However, inequitable conduct by the Petitioners is not established by the evidence in this case. As noted above, the Debtor traces his troubles to his former wife, Joyce, and her husband, Tony Ciliberti. He accuses them of conspiring with the Petitioners and other creditors to secure the Debtor's one-half interest in his residence at a low price, or, in the alternative, to force the Debtor to pay a higher price to secure her one-half interest. The Debtor overlooks the fact that he had a property settlement agreement under which he could have purchased his wife's one-half interest in the property; that he defaulted on a December, 1979 offer to buy the one-half interest for $5,000.00; that he failed between January and May of 1980 to redeem the property from a partition sale for $7,500.00; that he agreed in writing to buy it for $9,000.00 payable before June 13, later confessing his default in court to forestall a commissioner's sale; and that on the postponed date of the sale he wrote a check payable to "Joyce Barnard C. Reed," apparently intending some insult or impairing the negotiability of the check, which was not sent to her attorney until two days past the deadline. It would seem that the Debtor either voluntarily or obstinately missed six opportunities to secure her interest in his residence.

Nevertheless, Reed is convinced that the Cilibertis conspired to gain his interest in the residence by forcing him into bankruptcy. He contends that their conspiracy

by one-half to approximate the balance on the date of the Petition.

against him was executed in two ways: first, by inducing The Chemical Bank & Trust, one of the petitioning creditors here, to deny the Debtor a $300,000.00 loan after Ciliberti's former boss, Aubrey Orcutt, became president of Chemical Bank; the second instance occurring when the Bank hired Joyce Reed Ciliberti's divorce lawyer to file this petition.

While the Debtor is convinced that he has been maliciously victimized, the evidence does not support his contention. The Chemical Bank, one of the Petitioners, had denied the Debtor a $5,500.00 loan on January 23, 1980, four months before Orcutt became associated with the Bank. Further, the executive committee of the Bank had rejected the $300,000.00 loan one month prior to Orcutt's employment. At that time, the Debtor was in default on loans exceeding $90,000.00, including a loan secured by a 1977 pickup truck on which the first payment was several months past due. According to the testimony of Gary Austin, a bank officer the Court found to be a credible witness, the rejections were based on the Debtor's financial difficulties as well as deficiencies in a loan guaranty arrangement he had tried to help the Debtor secure. Moreover, the Bank had already sued the Debtor, obtaining judgment on two of the loans. There was no evidence that Tony Ciliberti urged any of the Petitioners to file this petition or to increase the Debtor's distress in any way.

Despite the Debtor's accusations, the Court does not find the choice of Mrs. Ciliberti's lawyer as Petitioners' counsel surprising. Mrs. Ciliberti, besides being the Debtor's former wife, was also a creditor of the Debtor and had more experience in dealing with him than any of her co-creditors. Further, her counsel is a lawyer well versed in bankruptcy matters and there is no evidence that he solicited any of the three Petitioners to initiate this proceeding.

The Debtor's contention that he was excluded from performing appraisals for the Kanawha Valley Bank by the intervention of Tony Ciliberti, its auditor, may have merit. That is not sufficient, however, to deny these Petitioners, who are not acting at the instance of Tony Ciliberti, the relief they seek.

Accordingly, it is found that the Debtor, Del H. Reed, Jr., is not paying a significant number and amount of his debts, either in the regular course of his business or in his personal affairs. Considering the materiality of the nonpayment and the contemporaneous conduct of his affairs, an involuntary order for relief should be entered against him.