STEPHENS, District Judge:
JURISDICTION
This is an appeal from the district court’s grant of summary judgment for petitioning creditors in an involuntary bankruptcy proceeding. Jurisdiction in the district court was based upon 28 U.S.C. Section 1334. The bankruptcy proceedings were withdrawn from reference to a bankruptcy judge after the filing of the petition and the appointment of the Trustee in bankruptcy, and reassigned to the district court. The notice of appeal having been filed on November 8, 1983, the appeal is governed by 28 U.S.C. § 1293(b) made applicable by section 405(c)(1)(B) of the 1978 Act, 92 Stat. 2685. See In re Carter, 759 F.2d 763, 766 (9th Cir.1985).
FACTS
The investment/consulting firm of Bishop, Baldwin, Reward, Dillingham and Wong (hereinafter “Debtor”) was incorporated in Hawaii in 1979. Ronald Ray Re-wald (“Rewald”) and Sunlin L.S. Wong each held 50% of the Debtor’s stock. Re-wald was chairman of the board and treasurer of the corporation, and Wong was president and a director until his resignation on August 2, 1983. The Debtor represented itself as being “one of Hawaii’s oldest and largest privately-held international investment and consulting firms”, dealing only in “secured, safe, non-risk” investments.
The Debtor claimed that investors’ monies were guaranteed by the FDIC up to $150,000 per account. The firm’s sales materials indicated that investors’ funds were “fully accessible without charge, cost, penalties, time deposits or restrictions,” and that investors were guaranteed a minimum 20% annual return on their investments.
Although the Debtor took in more than $20 million in five years, actual investments of these funds were very few. An accountant hired to prepare an accounting of the deposits and withdrawals from the *473 Debtor’s checking account testified in preliminary injunction proceedings that, of approximately $2.6 million invested in June and July, 1983, she could find no evidence that investor funds were applied to investments other than an amount totalling $146,000 paid to four small Hawaii corporations in which the Debtor held a partial stock ownership. During June and July, 1983, well over a million dollars was deposited each month to the account, and each month checks totalling sums just short of the amount of the deposits cleared the account. Approximately $250,000 each month was expended for Rewald’s personal expenses, including mortgage payments on his home.
On August 4, 1983, the date of the filing of the petition for involuntary bankruptcy, the only liquid asset the corporation held was $280,000 in cash in its checking account. This amount represented the total liquid reserve available to pay over 400 investors’ demand deposits which, according to the corporation’s books, totalled $17,-000,000.
On July 27, 1983, one of the petitioning creditors made a demand in writing to the Debtor for the return of his $27,000 investment. The funds were not returned. On July 29, 1983, Rewald attempted suicide at the Sheraton Waikiki Hotel, allegedly because the media was on the verge of exposing his background, which included a previous bankruptcy and a misdemeanor conviction.
On August 1, 1983, yet another petitioning creditor demanded the return of his $49,000 investment. This demand was refused. The creditor was informed by telephone by an employee of the Debtor that Rewald had frozen all of the firm’s business transactions for thirty days starting August 1,1983, and that there would be no disbursements made during that time. The firm’s office was closed, and a sign was placed on the door to the same effect. On August 2, 1983, Wong resigned as president and director of the Debtor. The corporation’s legal counsel withdrew. No one was managing the firm’s affairs. Corporate records were being removed from the office.
On or before August 4, 1983, twenty-six other investors who were owed approximately $830,000 made demand on the Debt- or for the return of their funds. Thirty additional demand letters dated after August 4,1983, were submitted to the Debtor. None of these demands was acknowledged.
On August 4, 1983, five creditors filed a petition for involuntary bankruptcy, alleging that the Debtor had not been generally paying its debts as they became due. On August 4, 1983, the bankruptcy court appointed Thomas E. Hayes as Interim Trustee of the Debtor and vested title in him to all of the Debtor’s property. On August 5, 1983, the Trustee filed an adversary complaint against Rewald and his wife seeking to impose a constructive trust on all personal assets of the Rewalds on the ground that the Rewalds had purchased them with misappropriated funds and moved for a temporary restraining order and preliminary injunction against the Rewalds.
The motion for temporary restraining order was granted on August 5, 1983, after consideration by the district judge of affidavits filed in support of the motion and the testimony of the Trustee and an employee of the Debtor. The hearing on the preliminary injunction was set for August 15, 1983.
On August 7, 1983, Rewald’s attorney delivered to the court all records of the Debtor in his possession. On August 8, 1983, the court ordered that these documents be sealed because of their potential disclosure of information relating to the CIA. The Debtor filed a general denial to the bankruptcy petition on August 12, 1983.
Rewald was arrested on August 8, 1983, immediately after his release from the hospital where he had been recuperating from his suicide attempt. He was charged with theft by deception under Hawaii criminal law.
The Trustee’s motion for a preliminary injunction was heard on August 15 and 16, *474 1983. After hearing the testimony of thirteen witnesses, including the former president of the Debtor, Wong, and five other employees and consultants of the firm, the district court found that the Debtor’s business constituted a “Ponzi scheme” in which earlier investors were being paid off with new investors’ funds, and entered an order preliminarily enjoining the Rewalds from disposing of any of their assets.
On August 31, 1983, the government filed a report on the status of the sealed documents, indicating that some of them had been segregated into separate sealed envelopes at the request of the CIA. The next day, the court issued an ex parte order regarding the documents. The court stated that none of the documents would lead to assets of the Debtor, that Rewald had only “slight involvements” with the CIA, and that Rewald considered himself a “more important, undisclosed associate of the CIA ... than he was in fact.” The court nonetheless ordered sealed all documents in the Debtor’s files “which the CIA has requested should not. be made public,.
On September 2, 1983, the petitioning creditors filed a motion for summary judgment and order for relief with affidavits supporting the motion. On September 15, 1983, the government moved ex parte for all documents referring directly or indirectly to the CIA to be filed under seal, and asked that the court determine the relevance of each such document so that the CIA could review it to determine if it contained classified information. The court granted the motion and ordered ex parte that all parties on notice of the order were prohibited from communicating to any person or entity any information referred to in the order.
On September 16, 1983, a Confidential Affidavit of Ronald Ray Rewald in opposition to the motion for summary judgment was filed under seal. At the same time, Rewald also filed motions for orders allowing discovery and use of classified information and for a lifting of the freeze order pro tanto to allow Rewald to pay civil and criminal defense fees and costs.
The hearing on the petitioning creditors’ motion for summary judgment and on Re-wald’s discovery and freeze order motions took place on September 20, 1983. The motion to discover classified information was denied on the grounds that the information sought was irrelevant to the question of whether an order for relief should issue against the Debtor. The court also denied the motion to lift the freeze order, finding no evidence before it to justify such action.
The court granted the petitioning creditors’ motion for summary judgment, finding that there were no genuine issues of material fact with respect to whether the Debtor had generally been paying its debts as they became due. The court held that the petitioning creditors were entitled to an order for relief as a matter of law.
According to a Statement of Affairs of Debtor Engaged in Business in the Bankruptcy Court filed by the Trustee on February 24, 1984, the Debtor had some $261,-092.00 cash on hand as of August 4, 1983, and other tangible assets of approximately $80,000. Total debts amounted to $12,749,-997.95.
On June 19, 1984, the Trustee filed a motion for partial summary judgment and imposition of a constructive trust in the adversary proceeding against the Rewalds. A hearing was held on this motion on July 26, 1984, and the court granted summary judgment in favor of the Trustee, imposing a constructive trust on all of the Rewalds’ known real and personal property.
THE BANKRUPTCY ADJUDICATION
11 U.S.C. Section 303(h)(1) directs the bankruptcy court to order relief against the debtor in an involuntary case if the debtor is generally not paying its debts as they become due. Bankruptcy Rule 1013 provides: “(a) The court shall determine the issue of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the motion, or enter other appropriate orders.” (Emphasis added). Entry of summary judgment *475 where appropriate is unquestionably a literal compliance with Rule 1013. The earliest practicable time is when there is sufficient information to resolve the conflict before the court.
The district court ordered summary judgment against the Debtor, finding that the “generally not paying” test was met and that the petitioning creditors were entitled to summary judgment as a matter of law. Summary judgment is appropriate where the “pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact” remaining to be determined in the case. Federal Rule of Civil Procedure 56(c); Bankruptcy Rule 7056.
The “generally not paying” test is to be applied as of the date of filing of the involuntary petition, in this case, August 4, 1983. In re JV Knitting Services, Inc., 4 B.R. 597, 598 (Bankr.S.D.Fla.1980). In applying the test, the Debtor claimed that emphasis should be placed not only on the number and amount of the claims, but on the regularity of payment as well. The Debtor contended that there were genuine issues of material fact regarding whether the Debtor’s inability to pay claims over a six-day period commencing July 29, 1983, the date of the first investor demand, constituted “generally not paying its debts.”
In In re All Media Properties, 5 B.R. 126, 142-143 (Bankr.S.D.Tex.), aff’d. 646 F.2d 193 (5th Cir.1981), the court noted that the term “generally not paying” was adopted in preference to terms used in earlier bankruptcy acts to allow more flexibility in the commencement of involuntary cases. The authority of the court is triggered and guided by the totality of the circumstances existing when the petition is filed. Congress intended to provide a flexibility which is not reducible to a simplistic formula. The availability of relief is not circumscribed by time but by knowledge.
In In re Reed, 11 B.R. 755, 760 (Bankr.S.D.W.Va.1981), the court pointed out that:
The court may examine the Debtor’s overall contemporaneous handling of its affairs in evaluting whether to order relief. If the Debtor is conducting his financial affairs in a manner inconsistent with good faith and outside the ordinary course of business, it may affect the court’s determination.
The fact that the Debtor involuntarily closed down may be taken into consideration as well. See In re Covey, 650 F.2d 877 (7th Cir.1981); In re 7H Land & Cattle Co., 6 B.R. 29, 31 (Bankr.D.Nev.1980).
In the present case it was clearly established that the Debtor had represented to the public that monies invested would be promptly returned on demand. Yet during the period from July 27 through August 4, 1984, 26 depositors made demands totalling $830,000. The Debtor honored none of them. The investors were informed by the Debtor that all business transactions would be frozen for a period of 30 days. There were insufficient liquid assets to pay investor demands on the date the petition was filed. Indeed, at the time of filing the officers and managers of the Debtor had resigned and records were being removed from the company’s office. In light of these unusual but undisputed facts, and without regard to whatever resources the Debtor might eventually be able to muster in the event of an ultimate liquidation, the district court correctly concluded that the Debtor was not paying its debts as they became due. The summary judgment adjudicating the Debtor a bankrupt was accordingly proper.
CONTINUATION OF SUMMARY JUDGMENT HEARING
Appellants contended that the bankruptcy court abused its discretion by refusing to continue the hearing on the Trustee’s motion for summary judgment under Federal Rule of Civil Procedure 56(f) to enable the appellants to conduct discovery regarding purported CIA involvement with the Debtor’s business. A district court’s order relating to discovery will be overturned only for an abuse of discretion. Munoz-Santana v. United States Immigration & Naturalization Service, 742 F.2d 561, 562 (9th Cir.1984). Refusal *476 to grant a continuance to permit discovery is also reviewed for abuse of discretion. See Aurora Enterprises, Inc. v. National Broadcasting Co., 688 F.2d 689, 696 (9th Cir.1982).
The district court reviewed the documents submitted by the appellants in opposition to the motion for summary judgment, including those filed under seal, and found that “[a]ll of the references made to the influence of the CIA claimed by Rewald in his operations were irrelevant and immaterial” to the bankruptcy case. Under 11 U.S.C. Section 303(h)(1), the only issue to be decided at the hearing was whether the Debtor was paying its debts as they became due. The appellants did not demonstrate that the additional discovery they sought would be relevant to this issue because the creditors established that the Debtor was generally not paying its debts regardless of the alleged CIA connection. Denial of their request for a continuance under Federal Rule of Civil Procedure 56(f) was not an abuse of the district court’s discretion.
DISCOVERY OF SEALED DOCUMENTS
Appellants requested an order allowing them to discover and use documents that the district court had sealed, contending that such use was necessary to their defense. The court denied their request, ruling that the information sought was irrelevant. The question of denial of access to classified information by the bankruptcy court is appealable only insofar as it bears on the adjudication of bankruptcy. See In re Mason, 709 F.2d 1313 (9th Cir.1983). Because this court holds that the adjudication of bankruptcy was proper without reference to any CIA involvement, the order denying appellants access to classified information is not currently appealable as a final order under 28 U.S.C. Section 1293, or any exception to the final judgment rule.
THE FREEZE ON REWALDS’ ASSETS
Finally, appellants contended that the district court erred in refusing to lift the freeze on the Rewalds’ personal assets to allow them to pay civil and criminal defense fees. The issue is rendered moot by the bankruptcy court’s order of August 4, 1984, in the Trustee’s adversary proceeding which imposed a constructive trust on all of the Rewalds’ personal assets and transferred them to the Trustee.
CONCLUSION
The bankruptcy court’s order adjudicating the Debtor bankruptcy under 11 U.S.C. Section 303(h)(1) is AFFIRMED.
ORDER FOR PUBLICATION
The petition for rehearing is denied. The request of appellants for publication is granted and the court’s opinion which differs to some extent from the earlier memorandum, is ordered filed.
The suggestion for rehearing en banc, together with the court’s proposed opinion has been circulated to the full court, and no member of the court having called for rehearing en banc nor objected to the opinion, the suggestion for rehearing en banc is therefore rejected.