**In re Alexander DiLORENZO, III, Alleged Debtor.**

**Bankruptcy No. 93 B 44255 (JLG).**

United States Bankruptcy Court, S.D. New York.

Dec. 15, 1993.

Shane and Paolillo, P.C. by Wayne M. Greenwald, Kallan & Torchio, P.C. by Daniel S. Torchio, New York City, for alleged debtor.

Chadbourne & Parke by Kenneth P. Coleman, New York City, for petitioning creditor, pro se.

MEMORANDUM DECISION DENYING REQUEST FOR RELIEF UNDER 11 U.S.C. § 303(f)

JAMES L. GARRITY, Jr., Bankruptcy Judge.

On August 20, 1993, an involuntary case under Chapter 7 of the Bankruptcy Code ("Code") was commenced against Alexander D. DiLorenzo, III ("DiLorenzo" or "Alleged Debtor"). Chadbourne & Parke ("Chadbourne"), one of the petitioning creditors herein, has moved pursuant to § 303(f) of the Code for an order conditioning the Alleged Debtor's right to utilize his property during the gap period. Chadbourne asks that DiLorenzo be required to give petitioning creditors at least ten days notice of any intention to encumber, transfer or otherwise dispose of any asset, other than as necessary to meet reasonable living expenses, and to disclose in such notice the nature of the proposed transaction and its principal terms, including, without limitation, the identity of the proposed transferee and transferee's relationship to the Alleged Debtor. Chadbourne insists that the relief is necessary to prevent DiLorenzo from transferring his assets for less than fair consideration to members of his family. The Alleged Debtor opposes the motion. For the reasons set forth below, we

find that Chadbourne's motion should be denied.[1]

## Facts

On or about August 20, 1993, an involuntary petition (the "August Petition") under Chapter 7 of the Code was filed against the Alleged Debtor by six creditors holding unpaid judgment claims aggregating $328,000.[2] On September 21, 1993, Barclays Business Credit, Inc. ("Barclays"), a judgment creditor in the approximate sum of $1,067,000, intervened as a petitioning creditor in accordance with § 303(c) of the Code. By agreement between petitioning creditors and Todtman, Young, Tunick, Nachamie, Hendler, Spizz & Drogan, P.C. ("Todtman Young"), the Alleged Debtor's former counsel, DiLorenzo's time to respond to the August Petition was extended up through and including October 22, 1993.[3]

The Alleged Debtor's assets consist of interests in family owned or controlled corporations and limited and general partnerships. Just prior to the October 22, 1993 deadline, Todtman Young determined that because it represents various general and limited partnerships in which DiLorenzo is the general partner, it could not represent him in the involuntary case. Accordingly, on or about October 21, 1993, DiLorenzo retained his present counsel who promptly moved pursuant to Bankruptcy Rule 9006(b) for an order further extending his time to move or otherwise respond to the August Petition up through and including November 22, 1993. Over the objection of the petitioning creditors we extended the Alleged Debtor's time to move or otherwise respond to the petition through November 12, 1993.[4]

On or about November 12, 1993, the Alleged Debtor moved pursuant to Fed. R.Civ.P. 12(b), as made applicable herein by Bankruptcy Rules 1011(b), 7012 and 9014 (the "Rule 12(b) motion"), for an order dismissing the case and the August Petition. The gravamen of the motion was that the petition was defective on its face and thus failed to state a cause of action upon which relief could be granted, because it did not allege that petitioning creditors were eligible under § 303(b) to file the August Petition.[5]

On November 30, 1993, without leave of the Court, Chadbourne and Messrs. Wallis and Friedman filed an amended involuntary petition under Chapter 7 of the Code which cured the pleading defect contained in the August Petition. On or about December 2, 1993, Chadbourne submitted papers in opposition to the Rule 12(b) motion. The next day Chadbourne moved by Order to Show Cause for the relief sought herein. The Rule 12(b) motion was resolved by agreement. The parties stipulated that the August Petition would be deemed amended as of December 8, 1993, that the amendment would relate

1. This Memorandum Decision constitutes our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, as made applicable to this contested matter by Bankruptcy Rules 7052 and 9014. Our subject matter jurisdiction of this matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a), and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.) This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

2. The petitioning creditors and the amounts of their judgments are as follows:

| | |
|---|---|
| Chadbourne | $186,000 |
| S. Donald Friedman | 63,000 |
| Joseph E. O'Gara | 41,000 |
| Melvin Wallis | 16,000 |
| Harvey L. Richer | 13,000 |
| David Crowley | 9,000 |

3. The Alleged Debtor's time to respond to the August Petition was first extended to October 6, 1993 and then further extended to October 22, 1993. In each instance, DiLorenzo agreed that pending the filing of his response, he would not transfer or otherwise divest himself of any assets.

4. By agreement, our order extending DiLorenzo's time to respond to the August Petition enjoined him from "incumbering or divesting himself of, without receiving reasonable, equivalent consideration for, any assets other than what is reasonably necessary for the maintenance and, support of the alleged debtor and any dependant of the alleged debtors."

5. The petitioning creditors utilized Official Bankruptcy Form 5 in commencing the involuntary case. In the portion of the form entitled "Allegations", petitioning creditors checked off boxes "2" and "3a.", but did not check off box "1". That box contains the allegation: "Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b)."

back to August 20, 1993 and that the Alleged Debtor's time to respond to that petition would be extended through December 20, 1993. Accordingly, the only matter left for us to determine is whether relief should be granted under § 303(f) of the Code.

## Discussion

During the gap period, an alleged debtor is afforded different types of protection by the Code. For example, the filing of an involuntary petition creates an estate and the alleged debtor benefits from the protection of the automatic stay. *See* 11 U.S.C. §§ 541(a) and 362(a). Pursuant to § 303(f), unless the court orders otherwise, the alleged debtor is free to continue to operate his business and use, acquire and dispose of his property free from the constraints imposed by § 363, as if the involuntary petition was not filed.[6] That right has been described as "[t]he most important protection given [an alleged debtor] by the Code ..." Benjamin Weintraub & Alan N. Resnick, *Bankruptcy Law Manual*, ¶ 2.14, at 2–43 (Warren, Gordon & Lamont, Inc., 3d ed. 1992). The statute does not specify either the cause sufficient to give rise to relief thereunder, or the nature of the relief available to an aggrieved party.[7] However, the legislative history instructs that an alleged debtor should remain in control of his assets unless it is shown that he "may attempt to abscond with assets, dispose of them at less than their fair market value, or dismantle his business, all to the detriment of [his] creditors." H.R.Rep. 95–595, 95th Cong., 1st Sess. 323 (1977); Senate Rep. No. 95–989, 95th Cong., 2d Sess. 33 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 6279, 5819.[8]

Chadbourne argues that relief under § 303(f) is warranted because it reasonably believes that unless checked, DiLorenzo will transfer estate assets to family members for less than fair consideration. As support for that contention Chadbourne points to the fact that DiLorenzo not only was sanctioned by the state court in his litigation with Barclays for failing to comply with Barclays' post-judgment discovery requests, but that the court issued an Order of Commitment fining him and directing that he appear for a hearing to determine whether he should be incarcerated as punishment for his contempt of court. In issuing that order, the state court found that DiLorenzo's "failure and neglect ... to comply with the [discovery order] was calculated to, and actually did defeat, impair, impede and prejudice the rights and remedies of [Barclays]."

We need not determine whether Chadbourne's interpretation of § 303(f) is correct[9], because there is no evidence in this

6. Section 303(f) of the Code states that:
   Notwithstanding section 363 of [the Code], except to the extent the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate and the debtor may continue to use, acquire or dispose of property as if an involuntary case concerning the debtor had not been commenced.
   11 U.S.C. § 303(f).

7. As to the latter issue, Collier suggests that "[a]n order imposing restrictions on the operations of the business may conform to the restrictions mentioned in section 363." 2 Lawrence P. King, *Collier on Bankruptcy*, ¶ 303.35[2], at p. 303–121 (15th ed. 1992).

8. Section 303(f) is not the only remedy available to an aggrieved party during the gap period. Pursuant to § 303(g), on the request of a party in interest, and after notice and hearing, the court may appoint an interim trustee if that relief is "necessary to preserve the property of the estate or to prevent loss to the estate." 11 U.S.C. § 303(g). Thus, interim trustees have been installed in instances where the court has found that it would protect and preserve property of the estate, *In re Alpine Lumber & Nursery*, 13 B.R. 977, 979 (Bankr.S.D.Cal.1981); *In re Reed*, 11 B.R. 755, 757 (Bankr.S.D.W.Va.1981); prevent concealment, waste or loss of assets by the alleged debtor, *In re Alpine Lumber & Nursery*, 13 B.R. at 979; *In re Rush*, 10 B.R. 518, 523 (Bankr.N.D.Ala.1980); or prevent irreparable harm which would likely result between the time of the filing of the petition and the scheduled hearing, *In re Reed*, 11 B.R. at 757. *See also* 2 *Collier on Bankruptcy*, ¶ 303.35[3], at p. 303–122—125 (15th ed. 1992) (court may appoint interim trustees to preserve property of the estate or prevent loss, concealment, or conversion of assets).

9. We are aware of only one case in which the scope of § 303(f) is discussed. In *Matter of Beaucrest Realty Assocs.*, 4 B.R. 164 (Bankr. E.D.N.Y.1980), the court denied a motion for the appointment of a Chapter 11 trustee to operate an alleged debtor's business during the gap period on the ground that the statute did not sanc-

record which supports its "fear" that DiLorenzo will transfer assets from his estate if left to his own devices. The state court order addressed DiLorenzo's failure to provide information about his assets to Barclays, and nothing more. The lack of evidence is particularly glaring because Chadbourne has not even attempted to obtain discovery on these matters from DiLorenzo. *See* Bankruptcy Rules 1018, 2004. We do not condone DiLorenzo's actions in the state court. However, we cannot conclude that the entry of the Order of Commitment in and of itself is a predicate for relief in this instance.[10]

### Conclusion

Based on the foregoing, Chadbourne's motion pursuant to § 303(f) is denied. An appropriate order shall be issued.

tion such relief. In reaching that conclusion, the court interpreted the legislative history of § 303(f) to show that "cause" for relief under that section is equivalent to what must be shown to justify the appointment of a Chapter 11 trustee under § 1104(a). *See Id.* at 165. Although we find the case instructive, we do not believe that it forecloses the argument made by Chadbourne in this instance. The issue regarding the scope of the statute did not arise in the context of a § 303(f) motion. Moreover, the decision does not purport to be dispositive on the scope of § 303(f).

10. Among other things, DiLorenzo argued that even if Chadbourne could prove that he was transferring his assets for less than fair consideration, his unfettered use and enjoyment of those assets should not be interrupted, because Chadbourne could recover those transfers after the entry of an order for relief by way of §§ 544, 548 and 549 of the Code. Additionally, he urged that the relief requested by Chadbourne is actually injunctive relief which cannot issue without the commencement of an adversary proceeding. We do not consider either of those arguments.