**In re John P. GALANIS, Debtor.**

**Bankruptcy No. 5–80–00302.**

United States Bankruptcy Court,
D. Connecticut.

June 4, 1982.

Howard Seife & Toni C. Lichstein, of Milbank, Tweed, Hadley & McCloy, New York City, Paul Knag, of Cummings & Lockwood, Stamford, Conn., for petitioner, The Chase Manhattan Bank, N. A.

Paul R. Grand, of Grand & Ostrow, New York City, for John P. Galanis.

Paula Schiffer, of Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for trustee.

## MEMORANDUM AND ORDER ON PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND DEBTOR'S MOTION TO DISMISS

ALAN H. W. SHIFF, Bankruptcy Judge.

### I.

### MOTION FOR SUMMARY JUDGMENT

#### A.

### BACKGROUND

On May 1, 1980, The Chase Manhattan Bank, N. A. (Chase) commenced this case by

filing an involuntary petition under Chapter 7. Thereafter, Abraham Spitalnik, doing business as Met Theatre Service (Met) and Michael Margolies intervened as petitioning creditors. Chase now moves the court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable in this proceeding by Bankruptcy Rules 121 and 756, so that an order for relief may enter against the debtor John P. Galanis (Galanis). Chase contends that there is no genuine issue as to any material fact and that the petitioners are entitled to judgment as a matter of law.

In opposing Chase's motion for summary judgment, Galanis contends that there are genuine issues of material fact regarding (1) whether or not Chase is a qualified petitioner, (2) whether or not Met is a qualified petitioner[1] and (3) whether or not Galanis is generally paying his debts as they become due.[2]

### B.

### DISCUSSION

### 1.

#### Chase As Petitioner

Chase alleges that Galanis is currently indebted to it in the principal amount of $3,000,000.00, plus interest accrued thereon. This liability allegedly arises from Galanis' written, unconditional guarantee of payment when due of the obligation of Lake Telecommunications (Lake) to Chase. Chase further alleges that Lake is in default and Galanis has failed to honor the guarantee agreement.

Galanis contends, however, that Chase fraudulently changed the terms of Lake's obligation from one which would be self-liq-

uidating to one payable on demand. As a result of the alleged fraud, Galanis argues that he was relieved of any obligations as a guarantor and, in any event, Chase is a contingent creditor because Lake was not in default.

While Chase correctly contends that disputes regarding a claim are properly reserved until after the entry of an order for relief, here Galanis raises an issue as to the contingency of Chase's claim. Since the liability of a guarantor is contingent unless the principal has defaulted, *In re All Media Properties, Inc.*, 5 B.R. 126, 133; 6 B.C.D. 586, 587 (Bkrtcy., S.D.Texas, 1980), the question raised by Galanis, namely whether or not Lake has defaulted on its obligation, directly relates to Chase's status as a qualified petitioning creditor.

■ The question then is whether this apparently material issue of fact is properly before the court as a genuine issue. Chase says it is not and argues that it was incumbent upon Galanis to respond to its motion and supporting affidavits with affidavits or other documentation as provided by F.R. Civ.P. 56(e). I do not agree. Since the issue of fraud was raised in Galanis' answer, Chase was on notice of that issue and in order to prevail on its motion for summary judgment, Chase had to demonstrate the absence of any genuine issue of material fact, including the issue of fraud raised by Galanis. This is so even as to issues which Galanis would bear the burden of proving at the time of trial. *See Dyer v. MacDougall*, 201 F.2d 265, 268 (2d Cir. 1952); *Manufacturers Trust Co. v. Rogers*, 181 F.Supp. 116, 123 (S.D.N.Y.1960), *aff'd sub nom. Manufacturers Trust Co. v. Kennedy*, 291

---

**1.** 11 U.S.C. § 303 in pertinent part provides

(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under Chapter 7 . . . of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability . . . if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

**2.** 11 U.S.C. § 303 provides in pertinent part

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due.

F.2d 460 (2d Cir. 1961); *see generally*, 6 *Moore's Federal Practice*, ¶ 56.15[3], at 56–463 (2d ed. 1948).

In the instant case, putting aside Chase's memorandum of law which denies the materiality of Galanis' defenses, Chase, in its supporting papers, has not challenged Galanis' defense of fraud. Hence, Galanis' failure to buttress its answer with affidavits is not fatal to his opposition to the motion for summary judgment under F.R. Civ.P. 56(e). *See generally, Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–161, 90 S.Ct. 1598, 1609–1610, 26 L.Ed.2d 142 (1970). Furthermore, the issue of fraud does not, in general, lend itself to summary judgment. *See Schmidt v. McKay*, 555 F.2d 30, 37 (2d Cir. 1977).

Accordingly, I conclude that a genuine issue of material fact exists as to Chase's standing as a petitioning creditor.

### 2.

### *Met As Petitioner*

In its intervening petition, Met alleges, *inter alia*, that it holds a non-contingent claim against Galanis in the amount of $1,360.00. In support of that allegation, Chase produced a portion of the examination of Galanis taken pursuant to Interim Bankruptcy Rule 1008 on July 14, 1981. In relevant part, the transcript includes the following:

Q  Mr. Galanis, you listed the Met Theatre Service as a creditor for a bill for theatre tickets in the amount of $1,360.00.

A  I did.

Q  Is it your testimony as of May 1, 1980 you owed the Met Theatre Service $1,360.00?

A  I believe that was the amount due and owing at that time. (Galanis Tr. p. 48)

In addition, Chase points to the 2nd Amended and Supplemental List of Creditors, submitted to this court by Galanis, which lists Met as a creditor and states, "We are informed that all debts were incurred on or before the date of the involuntary petition."

Galanis, however, now contends that there is a genuine issue of material fact as to whether he was indebted to Met on May 1, 1980, the date of the original petition. In opposition to Chase's motion for summary judgment, Galanis provided the affidavit of his brother-in-law, Thomas Williams, who claims that the debt to Met was his and further states

Although I cannot be absolutely certain, I believe the purchase of theatre tickets which resulted in this $1,360.00 debt were all made after May 1, 1980. In other words, it is my best recollection that the debt which I paid in full was incurred after May 1, 1980. I attempted to confirm this fact with Met Theatre Service, but a representative of Met Theatre Service refused to provide me with any information.

Galanis also produced a copy of Met's bill which is ambiguous as to the date the debt was incurred and argued that Met failed to allege in its intervening petition that it held its claim as of May 1, 1980.

Although the above referred to statements by Galanis are entitled to considerable weight, in view of Thomas William's affidavit that to the best of his recollection, the debt was incurred after Chase filed its petition, it cannot be said that there is no genuine issue of material fact as to whether Met was a creditor of Galanis on that date.

### 3.

### *Generally Not Paying Debts As They Become Due*

The test for determining whether an alleged debtor is "generally not paying such debtor's debts as such debts become due" requires examination of the number of his creditors, the amount of the debts not being paid, and his payment practices. *See In re Win-Sum Sports, Inc.*, 14 B.R. 389 (Bkrtcy., D.Conn.1981) (Krechevsky, J.); *In re All Media, supra*, 5 B.R. at 143, 6 B.C.D. at 594.

In this case, Galanis lists 38 creditors in his 2nd Amended and Supplemental List of Creditors. That list includes 26 creditors

with judgment claims totaling $5,886,485.11. In addition, Chase notes the judgment claim of Morris Kaplan in the amount of $356,025.00 (Seife Aff. ¶ 8). Chase also stresses Galanis' own statements that he did not recall paying any personal creditors in the period four months prior to the filing of the petition, with the possible exception of his American Express bill which was paid by various corporations for charges incurred on their behalf (Seife Aff. ¶ 10).

The supporting papers of Chase clearly indicate that Galanis was generally not paying his debts when due. Unlike the showing it made with respect to the nature of its claims, here Chase squarely placed the burden on Galanis to respond pursuant to F.R. Civ.P. 56(e). In opposition, Galanis for the most part merely offers argument of counsel which, in any event, is unpersuasive.

Galanis does not assert that he was making any payments to the creditors on the aforementioned list. Rather, he attempts to reduce the actual number of creditors whose claims were due or otherwise explain his nonpayment. First, he claims that twenty-one of the judgment creditors actually represent only two creditors. Of the remaining creditors on the list, Galanis claims that eight hold demand notes as to which no demand had been made, at least two of the three hold judgments resulting from "sewer service,"[3] the claim of Spyropoulous relates to a 1971 judgment, and the claim of Gonzales Shipyard arose after May 1, 1980. He explains his nonpayment of Chase's and Met's claims as noted above and concedes that the Internal Revenue Service and Michael Margolies held claims which were due and unpaid.[4]

▮ The documents submitted by Galanis explain, at most, why he was not paying

Met and Chase. The lack of any showing pursuant to F.R.Civ.P. 56(e) to support any of his other contentions renders them ineffective to raise a genuine issue of material fact regarding the requirements of 11 U.S.C. § 303(h)(1). *See Adickes v. S. H. Kress & Co., supra.* Moreover, with regard to Galanis' argument, it should be noted that simply because a debt is old hardly provides a basis for excluding it from consideration under 11 U.S.C. § 303(h)(1). On the contrary, it is a clear indication that the debt is "generally not being paid." *See In re Reed,* 11 B.R. 755, 760 (Bkrtcy., S.D.W. Va.1981). Similarly, Galanis cannot preclude the consideration of certain creditors by claiming that they are not pressing him for payment. As stated in *In re Win-Sum Sports, Inc., supra,* at 392–393, "A debt is no less due because a creditor has seen fit for a time to forebear in collecting it." Finally, assuming *arguendo* that counsel's contentions were supported by affidavits or other documentation as provided by F.R. Civ.P. 56(e), that the aforementioned twenty-one creditors should be counted as two, and that demand notes are not due until demand is made, it would still be clear that Chase removed any genuine issue of material fact under 11 U.S.C. § 303(h)(1). Even under those circumstances, Galanis would have had nine creditors as of May 1, 1980, who held claims of approximately six million dollars which were due.[5] The magnitude of these claims alone, coupled with the fact that no payments were being made to any creditors by Galanis' own admission, would compel a conclusion that Galanis was generally not paying his debts as such debts become due. *See Matter of Hill,* 5 B.R. 79, 6 B.C.D. 659 (Bkrtcy., D.Minn.1980), *aff'd,* 8 B.R. 779 (D.Minn.1981); *In re Kreidler Import Corp.,* 4 B.R. 256, 6 B.C.D. 608 (Bkrtcy., D.Md.1980).

---

**3.** Galanis did not allege that the claims which presumably underlie the judgments were invalid.

**4.** The claim of Morris Kaplan was left unaddressed by Galanis.

**5.** These nine would include the Internal Revenue Service, Michael Margolies, Spyropoulous, Morris Kaplan, the two partnerships which allegedly subsume twenty-one of the judgment creditors, and the three judgment creditors, at least two of whom allegedly hold judgments resulting from "sewer service."

## II.

### GALANIS' MOTION TO DISMISS

Galanis has filed a motion pursuant to Bankruptcy Rule 712[6] and Rule 12(b)(1) of The Federal Rules of Civil Procedure on the ground that less than three qualified petitioners have joined the petition.

■ This attack on the subject matter jurisdiction of the court is made "because Galanis contests the claims of both Chase and Met Theatre Service." (Debtor's Memorandum of Law, p. 4, filed 4/5/82).

It is clear that this court has subject matter jurisdiction over the instant case to determine whether or not an order for relief should enter. *See* 28 U.S.C. § 1471; 11 U.S.C. § 303(a).

Since genuine issues of material fact exist as to Chase's and Met's status as petitioning creditors, I conclude that the question whether the petition should be dismissed is best reserved until after trial on the merits.

## III.

### SUMMARY AND ORDER

Since a genuine issue of material fact exists with regard to the qualifications of Chase and Met as petitioning creditors, summary judgment is inappropriate. I find, however, that Galanis is generally not paying his debts as his debts become due and that there is no genuine issue of material fact as to that claim.

Accordingly, it is ORDERED that Chase's motion for summary judgment is denied; and it is

FURTHER ORDERED that the debtor's motion to dismiss is denied; and it is

FURTHER ORDERED that the clerk assign this matter for trial and advise the parties accordingly; and it is

FURTHER ORDERED that, pursuant to F.R.Civ.P. 56(d), the trial is limited to the issues of the qualifications of Chase and Met as petitioning creditors.

6. F.R.Civ.P. 12(b)(1) is made applicable by