**In the Matter of Lloyd E. HILL, Debtor,**

**and**

**Harriet G. Hill, Debtor.**

**Bankruptcy Nos. 4–79 BKY 01177(O), 4–79 BKY 01178(O).**

United States Bankruptcy Court, D. Minnesota, Fourth Division.

June 5, 1980.

Robert L. Lowe, Minneapolis, Minn., for Cargill.

Kenneth F. Johannson, Crookston, Minn., for debtors.

## MEMORANDUM AND ORDER

KENNETH G. OWENS, Bankruptcy Judge.

These involuntary cases under Chapter 7 of 11 U.S.C. Section 303 were commenced in each by a petition filed by one entity, Cargill, Incorporated (hereafter Cargill).

Trial of the issues was held pursuant to order on April 22, 1980, Robert L. Lowe, Esquire appearing for Cargill and Kenneth F. Johannson, Esquire for the alleged debtors.

The parties then agreed in lieu of the offer of testimony to submit the cases on (1) a stipulation of fact which had been previously offered in connection with a motion for summary judgment, (2) copy of the written guarantee of indebtedness of Warren Grain and Seed Company executed by Lloyd E. Hill and Harriet Hill and others to Cargill, and (3) explanatory statements made by counsel on the record, now transcribed for the file. The matter was thus submitted and the Court has now received post-trial memoranda.

## THE FACTS AS STIPULATED

"1. That, Lloyd E. Hill and Harriet G. Hill are indebted to Cargill, Inc. in the sum of $1,250,000.00, together with interest thereon at six percent (6%) from and after May 6, 1977. Said debt arises from that certain personal Guarantee of Account, dated August 16, 1976, executed by said Lloyd E. Hill and Harriet G. Hill, whereby they guaranteed the account debt of Warren Grain and Seed Company to Cargill, Inc. to a maximum limit of $1,250,000.00. That as of May 6, 1977, the Warren Grain and Seed Company account debt to Cargill, Inc. was in excess of $3,800,000.00 and is in excess of that sum to date."

"2. That, the State Bank of Warren, Minnesota has obtained a Judgment against Lloyd E. Hill in the sum of $106,205.00, together with the sum of $20,000.00 attorneys' fees. Said Judgment was entered in District Court, County of Marshall, Ninth Judicial District on July 17, 1979. Said Judgment arose out of a certain Promissory Note, executed by said Lloyd E. Hill, to cover debts owed by Warren Grain and Seed Company to the State Bank of Warren by reason of said Bank's honoring Warren Grain and Seed Company overdrafts."

"3. That Peoples State Bank of Warren, Minnesota has obtained a Judgment against Lloyd E. Hill in the sum of $32,000.00. Said Judgment has been entered in the Marshall County District Court, Ninth Judicial District. Said Judgment arose out of indebtedness of Warren Grain and Seed Company, either guaranteed by said Lloyd E. Hill or

for which Lloyd E. Hill signed a personal note."

"4. The debtors herein, Lloyd E. Hill and Harriet G. Hill owe no debts other than those set forth herein.

This Stipulation of Facts shall not prejudice Debtors right to assert that the debts enumerated herein are contingent as to liability or to assert any other defenses they may have to the claimed debts."

5. The Hills' guarantee to Cargill contained the following operative paragraph:

"c. That this is an absolute continuing guarantee which shall remain in full force and effect until fifteen (15) days after the delivery to Cargill of a notice in writing signed by Guarantors terminating the said guarantee, provided, however, that in the event of such termination said guarantee shall continue to apply to any and all indebtedness incurred prior to and including the 15 days following the receipt of such notice by Cargill."

## DERIVED FACTS

6. Lloyd E. Hill and Harriet G. Hill are natural persons that may be debtors under Chapter 7 of the Bankruptcy Code.

7. There are fewer than twelve entities holding claims against the Hills or either of them not contingent as to liability.

8. Cargill, Incorporated is the holder of a claim against the Hills and each of them for at least $5,000.00 as to each, not contingent as to liability and exceeding at least in said amount the value of any security held therefore.

9. Each of the Hills is generally not paying their respective debts as such debts become due.

## DISCUSSION

1. *The Status of Cargill and its Claim.*

It was made to appear in connection with previous motions made in these cases, and as now reflected in the present record by Mr. Johannson's statement, that certain litigation commenced by Cargill in the state

court, or responsive litigation elicited thereby still pends and is undetermined.

As to the primary obligation of Warren Grain and Seed Company to Cargill, the indebtedness unquestionably exists but that corporation has commenced a suit against Cargill for certain anti-trust violations seeking damages in excess of the amount of that debt. That litigation has not yet resulted in trial and is undetermined.

In response to Cargill's action in the state court against the Hills and others based upon the guarantee, they have responded with certain defenses and counterclaims. In the state court, the Hills raised the defenses of payment, of breach of contract, of lack of consideration, and assert that the guarantee was executed as a result of undue influence and economic duress. At the trial level, Cargill obtained at least a partial summary judgment but an appeal still pends, and so far as appears, no favorable judgment or ruling was made at any stage of that proceeding in favor of the Hills.

■ The mere fact of the pendency of the undecided litigation with respect to defenses and claims is not directly relevant to the issues presented by the petition. The obligations antedated the collection activities that elicited the responsive and defensive litigation, and clearly constituted claims in the bankruptcy sense. There was no state court finding or determination in the antitrust-litigation so no established offset. Nor was there any finding in favor of the personal defenses asserted by the Hills, such finding as was made, still on appeal, being favorable to Cargill. Accordingly the Cargill claims stand established, since no independent or sufficient proof to the contrary appears in the present record.

Cp. under the Bankruptcy Act *In re Thomas*, D.Colo., 211 F.Supp. 187, affirmed, 10 Cir., 327 F.2d 667, cert. denied 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 36; *Denham v. Shellman Grain Elevator, Inc.*, 5 Cir., 444 F.2d 1376.

This is not to say that if the anti-trust or other claims have merit, they may not become part of the debtors' estates for asser-

tion or administration by the trustee either independently or to reduce or defeat the Cargill claim.

Cargill, Incorporated is clearly the holder of a claim against each of the Hills in an amount clearly in excess of the $5,000.00 requirement of 11 U.S.C. Section 303(b). The present contention of the Hills that the obligation under the guarantee is not ripe because allegedly conditional and in the nature of an indemnity is not well taken. The guarantee by its own expressed terms is "an absolute continuing guarantee". Even without that expression, in the absence of some expressed qualification, the guarantee would have to be treated as an absolute one. That is the rule announced by *Holbert v. Wermerskirchen*, 210 Minn. 119, 297 N.W. 327 and a more recent expression of the rule is stated in *Dahmes v. Industrial Credit Co.*, 261 Minn. 26, 110 N.W.2d 484.

The stipulated facts demonstrate that there are only three holders of claims against the Hills so that only one qualifying petitioning claimant is required as here.

### 2. *The Other Claims.*

■ Mr. Johannson's statement also points out that the docketing of the judgment mentioned in findings 2 and 3 has resulted in the liening of certain real property and that enforcement of the lien and certain other collection possibilities may result in the eventual satisfaction of some or all of the obligations to the State Bank of Warren and to the Peoples State Bank of Warren. However, these are mere speculative possibilities not sufficient to defeat the status of the judgments as claims.

### 3. *"Generally Not Paying."*

The absence of a conference committee in the resolution of differences between the House and Senate versions of the legislation which emerged as the Bankruptcy Code makes resort to legislative history unproductive. All that can be said with certainty is that Congress intended to substitute some version of the "equity test" of insolvency for the previous scheme of an act of bankruptcy coupled with "balance sheet" insolvency.

H.R. 8200 spoke "generally *unable* to pay", S. 2266 said "generally unable to pay or has failed to pay a major portion thereof". The Code, said to be a "compromise", in this regard specifies only "generally not paying".

■ I believe the resulting phrase is entitled to a straightforward and uncomplicated reading. Thus the ability to pay is not a direct factor although it obviously plays a part in the test which is simply the objective one of actual "failure to pay" debts as they mature. The test is not one of a percentage of amount of debt nor of number of claimants.

■ The noun general imports something that involves or is applicable to whole. The companion adverb "generally" as used in the statute accordingly means:

"in a general manner; as a: in disregard of specific instance and with regard to an overall picture"

(Webster's Collegiate Dictionary, Fifth Ed.).

■ In such sense, an entity is "generally" paying its debts as they become due when it is paying "all" such as they become due. Of course, the rule must accommodate to the possibility individual or particular debts may remain unpaid because they are de minimis or minor, for that or some other reason are overlooked, or are simply for some legitimate reason disputed. An inability to pay while not a part of the direct test nevertheless has bearing on any such suggested exclusion.

■ In the present case, all but three of the Hills' debts are being paid. Nothing in the present record, however, indicates such are other than small monthly consumer amounts as in the *Denham* case, supra. The three unpaid are obviously large and of such consequence as not to be overlooked. Nor are those to the banks disputed. That to Cargill may be disputed but it constitutes such an overwhelming portion of the total that the failure to pay that alone as well constitutes "generally not paying".

In short, in this case, failure to pay any of the three obligations would of itself satisfy the requirement of 11 U.S.C. Sec. 303(h) that:

"(1) the debtor is generally not paying such debtor's debts as such debts become due;"

The foregoing shall, pursuant to Bankruptcy Rule 752, constitute the findings of fact and conclusions of law in these cases.

ACCORDINGLY, IT IS ORDERED that judgment in the form of an order for relief shall be entered as to each debtor named in the caption.