**In the Matter of 7H LAND & CATTLE CO., aka 7H Land and Cattle Corp., and Seven H Land & Cattle Co., Inc., a Nevada Corporation;**

**Lynn W. Rose, Individually, and doing business as Lynn W. Rose Livestock & 7H Land & Cattle Company;**

**Elaine G. Rose, Individually, and doing business as Lynn W. Rose Livestock & 7H Land & Cattle Company, Alleged Debtors.**

**Bankruptcy Nos. 80–00183 to 80–00185.**

United States Bankruptcy Court,
D. Nevada.

June 20, 1980.

---

Lionel, Sawyer & Collins by Richard W. Horton, Reno, Nev., for alleged debtors.

Hawkins, Rhodes, Sharp, Barbagelata & Haase by Prince A. Hawkins, Reno, Nev., for Security.

## ORDER DENYING MOTIONS TO DISMISS CASES FOR INVOLUNTARY BANKRUPTCIES

BERT M. GOLDWATER, Bankruptcy Judge.

Alleged debtors Lynn and Elaine Rose (Roses) and Seven H Land and Cattle Co. (7H), a Nevada corporation, have moved to dismiss[1] three involuntary cases commenced against them by Security Bank of Nevada (Security) upon the ground that the petitions fail to state a claim upon which relief may be granted. More specifically, in their Points and Authorities and Argument, alleged debtors contend that an allegation that a debtor "is generally not paying such debtor's debts as such debts become due"[2] does not constitute ground for an order for relief where further allegations of the complaint show that there is only one creditor, the bank, to whom the alleged debtors owe an obligation consisting of a note representing numerous checks.

The allegations of the complaint that there are fewer than twelve holders of claims within the meaning of 11 U.S.C. 303(b)(2) are not controverted. Nor is there any denial of the fact that the Roses and 7H executed a joint promissory note in favor of Security in the sum of $1,369,661.04.

At the time of hearing on the Motions to Dismiss, there was also considered Motions for Change of Venue in the Roses' cases. Those motions were denied but the alleged debtors testified to matters relative to both the Motions to Dismiss and the Motions for Change of Venue. Particularly the Roses testified there were no debts other than obligations to Security. By reason of such testimony alleged debtors request their Motions to Dismiss be treated as Motions for Summary Judgment.

A Motion for Summary Judgment will be granted where there are no issues of fact. (*Rules of Bankruptcy Procedure*, Rule 756, adopting Rule 56 of the Federal Rules of Civil Procedure.) As will be hereinafter shown, the allegations of the petitions are sufficient in law but there remain issues of fact as to the circumstances of alleged debtors having only one creditor. There being issues of fact, the Motions to Dismiss will not be treated as Motions for Summary Judgment, or if so treated, will be denied.

### I.

The new Bankruptcy Code provides in relevant part as to involuntary bankruptcy as follows:

"If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter which the petition was filed, only if—

(1) The debtor is generally not paying such debtor's debts as such debts became due; or ..." 11 U.S.C. 303(h)(1)

Apart from related problems of the time meant when "as such debts became due"[3] there is in this case really only one central issue: Is an allegation that the alleged debtors have failed to pay one creditor con-

---

1. Rule 12(b)(6) of Federal Rules of Civil Procedure made applicable by Bankruptcy Rule of Procedure 712(b).

2. In the words of Bankruptcy Code Section 303(h)(1).

3. *In Matter of Trans–High Corporation*, 3 B.R. 1 (Bkrtcy., S.D.N.Y.1980).

stitute "generally not paying such debtor's debts"? Or stated another way, under what circumstances may a single creditor establish a case for involuntary bankruptcy with only proof of a default in respect to the debt or debts owing to him? [4]

It fairly appears from responses to the Motions to Dismiss that alleged debtors maintained active checking accounts at the Elko branch of Security from the early part of 1979 until the middle of February 1980.[5] These were used in connection with the purchase and sale of cattle in Nevada, California, Idaho, Montana and Oregon. Alleged debtors during one week between February 5, 1980 and February 12, 1980 deposited with Security six checks drawn on their account at an Idaho bank in the total sum of $1,667,862.61 which did not clear resulting in a substantial overdraft represented by the promissory note.

## II.

Primarily, under the Code it is cessation of payment as distinguished from ability to pay. Under the old Bankruptcy Act, one of the grounds as an act of bankruptcy was "while insolvent or *unable to pay his debts as they mature*, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property".[6] (Emphasis supplied.) Ability, because of an insolvency test, rather than merely not paying, being the ground in that section, it was held in *In re Hudson & Manhattan Railroad Company* (S.D.N.Y.1955) 138 F.Supp. 195, that bankruptcy adjudication was warranted where there was a huge obligation due in several years and it was inescapable that the al-

leged bankrupt would be *unable* to pay it. So, too, in *Crateo, Inc. v. Intermark, Inc.* (9th Cir. 1976) 536 F.2d 862, the court properly instructed the jury that the test was not whether the alleged bankrupt was unable to pay substantially all of its debts, but rather *inability* to pay *one*, two, or three debts.

■ Debt means a liability on a claim [7] and a claim is a right to payment regardless of the nature of the claim.[8] Hence, under the Code, an alleged debtor who ceases, refuses or omits payment due which another has a right to receive, regardless of the alleged debtor's ability, may possibly be within the meaning and scope of involuntary bankruptcy.

## III.

Commenting on Section 303(h)(1), 2 *Collier on Bankruptcy* (15th ed. 1979) para. 303.11(1) at pp. 303–28, states:

"Although the precise scope and meaning assigned to the term of 'generally not paying' are left to the courts, it is clear that a court must find more than a prospective inability by the debtor to pay only a few of his debts, and more than a past failure to pay a few of such liabilities. It is doubtless intended that a court should properly consider both the number and amount in determining whether the inability or failure to pay is in fact 'general'." [9]

■ It may be assumed that in the ordinary case there can be no order for relief with no more proof than mere failure to meet liability to a single creditor.[10]

---

4. One creditor may file for the class if there are fewer than twelve holders of claims aggregating $5,000. [11 U.S.C. 303(b)(2)] The issue here is strictly one creditor and one obligation.

5. Approximately $44,000,000 in deposits during the year.

6. Section 3(a)(5) of the Act (now repealed former 11 U.S.C. 21). See also the term "inability to meet its debts" in old Chapter X, Sections 115 and 130.

7. 11 U.S.C. 101(11).

8. 11 U.S.C. 101(4).

9. Also see *Report of the Commission on the Bankruptcy Laws of the United States*, Part II at 75 (1973).

10. See discussion under Canadian and French bankruptcy laws: "Failure To Pay One's Debts Generally As They Become Due: The Experience of France and Canada", John Honsberger, Q.C., 54 Amer.Bk.Law J. at page 153 (Spring 1980).

In the case of *Holmes and Sinclair* (1975) 20 C.B.R. (N.S.) 111 (Ont.), the court set forth special circumstances where a single debt to one creditor might give rise to an order for involuntary bankruptcy. Canadian law requires a showing that a debtor "ceases to meet his liabilities generally as they became due". [I *Revised Statutes of Canada* (1970) Chap. B–3, Part II, 24(1)(j)] Said the court:

"I have carefully considered these decisions and it is clear that the Courts, in Ontario at least, have granted a receiving order on the basis of a default to one creditor in special circumstances. These circumstances are:

(a) The creditor is the only creditor of the debtor; and the debtor has failed to meet repeated demands of the creditor; in these circumstances he should not be denied the benefits of the Bankruptcy Act by reason only of his unique character; or

(b) The creditor is a significant creditor and there are special circumstances such as fraud on the part of the debtor which make it imperative that the processes of the Bankruptcy Act be set in motion immediately for the protection of the whole class of creditors; or

(c) The debtor admits that he is unable to pay his creditors generally, although they and the obligations are not identified."

Each of these special circumstances is a matter of evidence. Certainly the first is unusual: that over a reasonable period of time there has been and there is only one creditor. The alleged debtors here help make a case for Security when they testified at the hearing on the motions that they have no other creditors. I am inclined to agree with the Canadian court that in such exceptional case there could be an order for relief, providing, under all the circumstances, the sole creditor shows that he *cannot possibly obtain adequate relief in the ordinary courts* without resorting to the Bankruptcy Court notwithstanding the Code is essentially designed for classes of creditors.

The reasoning of the Canadian cases is well set forth in *Re Dixie Market (Nurseries) Limited* (1971) 14 C.B.R. (N.S.) 281 (Ont.), where the court said:

"Turning to the petition, there is no denial of para. 1. As I have pointed out, the debt of the petitioner is admitted so there is no dispute in respect of para. 2. With reference to para. 3, the petitioning creditor has certainly no security. The only paragraph in the petition which is contested, is whether or not the debtor has ceased to meet its liabilities generally as they become due. If there were liabilities to other creditors, there would be a question in this case as to whether or not the act of bankruptcy has been committed, but this is one of those peculiar situations in which there is only one debt owing and that debt is the amount owing to the petitioning creditor.

Whether or not the failure to pay a single creditor can constitute ceasing to meet liabilities generally as they become due is not an easy question. There have been a number of decisions on this point. However, in this province, the case of *Re Raitblat*, 5 C.B.R. 714, 28 O.W.N. 237, [1925] 2 D.L.R. 1219, affirmed by the Court of Appeal 5 C.B.R. 765, 28 O.W.N. 292, [1925] 3 D.L.R. 446, has decided that a failure to pay a single creditor may constitute ceasing to meet liabilities generally as they become due: see also *Re Freedman*, 4 C.B.R. 499, [1924] 1 D.L.R. 682, reversed on other grounds 5 C.B.R. 47, 55 O.L.R. 206, [1924] 3 D.L.R. 517 (C.A.) and *Re Glenn* (1941), 23 C.B.R. 81 (Ont.).

I can see no reason why, if there is only a single creditor and there has been a failure to pay that creditor, this cannot constitute ceasing to meet liabilities generally. *To hold otherwise would be to deprive the petitioning creditor of the benefits of the Bankruptcy Act*, R.S.C. 1952, c. 14." (Emphasis added.)

The second special circumstance would not be uncommon. Fraud as well as trick and artifice constitute special circumstances. In *Bielaski v. National City Bank of New York* (S.D.N.Y.1932) 58 F.2d 657, a

corporate officer forged notes to a bank and used the money to keep trade creditors current. In finding for the Trustee in Bankruptcy that the company was actually unable to pay its debts and was insolvent, the court said:

> "It is true that it paid its more pressing debts, those in which there was a likelihood of jail for Sparler unless payment was made. But it did so only by means of cash advances made or procured by Sparler, and it was still indebted for the same amount."

Petitioner is entitled to show special circumstances, if the same exist, that there is only one creditor because debtors, by some scam, artifice, trick or fraud, were using uncollectible deposits to pay other creditors. At least no case should be dismissed out of hand upon the bare proposition that there is only one creditor and, hence, for that simple reason alone no case could ever be made. The burden is upon petitioner to show that the overdrawn account was an unusual single debt created by special circumstances surrounding the dishonor of deposits with unacceptable business methods within the ambit of fraud, trick, artifice or scam. A mere overdrawn account is insufficient.[11]

In the Canadian case of *Re King Petroleum Ltd.* (1973) 19 C.B.R. (N.S.) 16 (Ont.), the debtor's purchases of gasoline from the petitioning creditor had gone from 200,000 gallons per month in 1972 to over 2,000,000 gallons per month in May of 1973. In April 1973, the outstanding balance of $304,057.16 was paid in full. The May account jumped to $559,327.09 and by July was $863,000. Although $200,000 was paid on account, there was a balance of $705,293.11 as of the time of filing the petition on July 17, 1973. Prior to the filing of the petition, debtor had offered to pay $200,000 on August 1 and $200,000 on September 1 with the balance of $300,000 secured by a mortgage on real estate. Debtor had advised the creditor that a refusal of the offer would mean liquidation.

The Canadian court could not find (due to the conflicting wording of the Canadian statutes) that a transfer to the major shareholder of $400,000 was a preference constituting an act of bankruptcy but it did analyze the payments to the shareholder and found that the heavy purchases were made for only one purpose: as a design to generate sufficient cash to repay money due the major shareholder. Although there were inconsequential amounts due other creditors, it was a case of one principal creditor and the court entered an order for relief.

The Canadian cases are not wholly in agreement that a single creditor may show the debtor has ceased to meet that one liability as grounds for involuntary bankruptcy. See *Re Elkind; Samuel Hart & Co. v. Elkind* (1966) 9 C.B.R. (N.S.) 274 (Ont.). But when the circumstances surrounding the single creditor are carefully scrutinized the attitude of the Canadian bankruptcy courts is to grant an order for relief when those circumstances bear closely upon trick, artifice, scam and fraud.

### IV.

To come within the plural of "debts" used in the Code[12] petitioner points out that there are a number of checks underlying the single note. Security then reasons that these are separate debts under the Uniform Commercial Code. See *NRS* 104.-3802. There is no need to torture substance for form. Suffice to say that one debt of one creditor will meet the requirements of the Code if that obligation otherwise comes within the very narrow special circumstances justifying an order for relief.

### V.

Section 59 of the old Bankruptcy Act permitted a petition for involuntary bankruptcy by one creditor with an allegation that there was liability aggregating $500 "if all the creditors of the person are less

---

**11.** *Re Holmes and Sinclair* (1975) 20 C.B.R. (N.S.) 111 (Ont.).

**12.** 11 U.S.C. 303(h)(1).

than twelve in number".[13]  The new Code[14] also uses the plural of "fewer than 12 holders" (of claims) in permitting one person to file if there is "at least $5,000 of such claims".

In view of this language in the plural as to creditors, combined with the plural of "debts" and the use of the word "generally" it must be either (1) an exceptional case of a debtor with a sole creditor who would otherwise be without an adequate remedy under State or Federal law (other than bankruptcy law) if denied an order for relief or (2) a showing of special circumstances amounting to fraud, trick, artifice or scam.

The Motions to Dismiss are denied.  Alleged debtors shall answer within ten days.

---

**13.** Former 11 U.S.C. 95.

**14.** 11 U.S.C. 303(b)(2).