**In the matter of Albert GOLDSMITH a/k/a Albert Edward Goldsmith, Alleged Debtor.**

**In the matter of A. GOLDSMITH PROPERTIES, INC., Alleged Debtor.**

**Bankruptcy Nos. 182–12198–16, 182–12197–16.**

United States Bankruptcy Court, E.D. New York.

June 22, 1983.

Charles R. Tropp, Staten Island, N.Y., for alleged debtors, for the motion.

Corash & Hollender, by Paul Hollender, Staten Island, N.Y., for creditor in opposition.

MANUEL J. PRICE, Bankruptcy Judge.

These are motions made pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure to dismiss two involuntary petitions for relief under Chapter 11 of the Bankruptcy Reform Act of 1978 (the CODE), 11 U.S.C. §§ 303 and 1101 *et seq.*, which were filed against Albert Goldsmith (GOLDSMITH) and A. Goldsmith Properties, Inc. (GOLDSMITH PROPERTIES) (collectively the ALLEGED DEBTORS). Rules 12(b) and 56 of the Federal Rules are made applicable to bankruptcy proceedings by Rules 121, 712 and 756 of the Rules of Bankruptcy Procedure.

The following are the facts which were adduced by the papers submitted by the parties and the oral argument which took place on March 10, 1983:

On August 26, 1982, Al's Heating Service, Inc. (AL'S HEATING or THE PETITIONING CREDITOR), filed involuntary petitions for relief under Chapter 11 against Goldsmith, Goldsmith Properties, Result Properties, Inc., and Result Agency, Inc. The three corporations were either wholly owned or controlled by Goldsmith. Each petition was identical and alleged that each debtor had less than twelve creditors, that each owed the petitioning creditor $85,-734.91 and that they each were not generally paying their debts as they became due. Shortly thereafter, the petitioning creditor withdrew the involuntary petitions against the two Result corporations so that only Goldsmith and Goldsmith Properties are still alleged debtors in this court. These two cases have not been consolidated but they have been treated as one in the papers submitted by both sides and in the argument before me, so that I shall address both motions in this opinion.

The business of the alleged debtors is buying distressed properties at foreclosure sales, repairing and renovating them, then renting them and eventually selling them at a profit. As a result of this activity, the alleged debtors own multiple dwellings, commercial properties, and one and two-family homes. (Affirmation in Support of Motion for Dismissal of Involuntary Petition, pp. 3, 5). The debt upon which the involuntary petitions is based arose from Al's Heating supplying fuel oil to a number of these buildings between 1973 and 1981. Of the total amount claimed to be owing, $51,267.15 represents deliveries of fuel oil; the remainder, $34,467.76, represents charges for interest and service of the buildings' heating systems.

Neither Goldsmith nor Goldsmith Properties is indebted to more than eleven unsecured creditors. (Tr., p. 7, *ll.* 3–4, Alleged Debtors' Memorandum, p. 2) In addition to the Al's Heating debt, however, they also owe about $60,000 to banks in unsecured loans. (Tr., p. 41, *l.* 24—p. 42, *l.* 9; Affirmation in Support of Motion for Dismissal of Involuntary Petition, Exhibit L). The papers and oral argument reflect a dispute about whether the amount claimed by the petitioning creditor in excess of $51,267.15 was in fact owed: the alleged debtors maintain that the interest and service charges were not in accordance with the bargain between the parties, and the petitioning creditor insists that these charges were proper. Goldsmith's attorney conceded, "We owe him the money, there is no dispute about that. The dispute is to how much." (Tr., p. 9, *ll.* 19–20; *see also* Tr., pp. 43, 47, 51) Since on a motion for summary judgment, all disputed factual issues must be resolved against the moving party, I will assume that the alleged debtors, together, are indebted to the petitioning creditor in the amount of $85,734.91. (See Tr., pp. 17, 22) The petitioning creditor admits, however, that there is a dispute over the amount due, if any, for interest and service charges, (Tr., pp. 22, 23) and the papers submitted reflect that the alleged debtors have some ground for their objection to some of the charges: finance charges, they

claim, were first applied to their accounts in April, 1980 (Affirmation in Support of Motion for Dismissal of Involuntary Petition, p. 6, Exhibit "D"), but the petitioning creditor is including finance charges calculated from 1973 in the amount it is claiming is due. (Affirmation in Support of Motion for Dismissal of Involuntary Petition, p. 9). The alleged debtors also claim that the creditor is charging them nearly $10,000 for services although that amount was never billed. *Id.* The petitioning creditor does not contest these allegations in its papers and consequently I conclude that there is a bona fide dispute as to the amount owed. *See* F.R.C.P. 56(e).

Goldsmith and Goldsmith Properties explain their failure to pay that part of the debt that is undisputed as being based on sound business principles: they do not wish to jeopardize their negotiating posture. On the argument of the motion, their attorney contended:

> "There is no reasonable businessman that is going to knuckle down to an inflated demand and say, 'Oh, well, I don't really owe you $100,000, I owe you 50, so here is the 50,' and leave himself open for a lawsuit for the 100. If there is no agreement as to the figure, any reasonable businessman is going to say, 'Look, until you agree with me as to what I owe you, I am not going to pay you.' This is normal business procedure. There is no question about the fact that we owe him money, but the point is that one of the reasons that we have not paid him that money is because the petitioning creditor and the debtor have not come to an agreement as to how much money that is outstanding."

(Tr., p. 10, *ll.* 11–24)

Since the petitions in these cases were filed, the petitioning creditor has conducted discovery. (Tr., p. 6) A purpose of this discovery, the petitioning creditor claimed, was to determine whether the alleged debtors had breached what it claimed was the parties' payment agreement. According to

Al's Heating, this agreement was that the fuel oil charge for a particular building would be paid in full when that building was sold. During oral argument, the attorney for the petitioning creditor contended that its discovery had revealed that in fact, although some of these buildings had been sold, the money due for fuel oil for these buildings was not paid. (Tr., pp. 27, 50) For the purpose of this motion, I take these facts to be true. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177; *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444 (2d Cir.1980); *Rhoads v. McFerran,* 517 F.2d 66 (2d Cir.1975); *accord* 6 Moore's Federal Practice § 56.02 (2d ed. 1976).

Neither of the alleged debtors is delinquent in the payment of any debts other than that owed to Al's Heating. (Affirmation in Support of Motion for Dismissal of Involuntary Petition at 13). As the attorney for the petitioning creditor stated during the argument on this motion:

> "We have never claimed that Mr. Goldsmith has not been paying his other creditors. That is why I think it is irrelevant that he has ten attached affidavits of people. We do not dispute that ... We are assuming that he is paying everyone else."

(Tr., p. 24, *ll.* 6–12. *See also* Tr., p. 26, *ll.* 20–21).

Both Goldsmith and Goldsmith Properties are solvent. An uncontroverted affidavit supplied by the debtors shows that together they own forty-seven buildings valued at 1.75 million dollars, in which they have more than $870,000 in equity. (Affirmation in Support of Motion for Dismissal of Involuntary Petition at 5; exhibit A). In addition, Goldsmith is a partner in an enterprise, A.I.M. Properties, which owns property in which it has $186,000 of equity. (*id.,* exhibit B) Goldsmith's other assets include mortgages, stock, cash, and personal proper-

ty which he values at approximately $307,-819.87 (*id.,* exhibit C). On the liabilities side, Goldsmith's outstanding unsecured loans total about $60,856.16, and are all being paid regularly (*id.* at 12), as are the debtors' only other creditors, who supply materials for repairs to the properties. (*Id.*) The attorney for the petitioning creditor contends, however, that "it does not matter if [Goldsmith and Goldsmith Properties are] solvent." (Tr., p. 21, *ll.* 19–20. See also Tr., p. 20, *ll.* 18–20).

Finally, the petitioning creditor has instituted no actions elsewhere to collect the debts, contending that "just because the alleged debtor would prefer that we go into State Court does not mean that we have to do that." (Tr., p. 18, *l.* 24—p. 19, *l.* 1)

The requirements for filing an involuntary petition for relief are governed by section 303 of the Code. Subdivision (a) of that section provides:

"(a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person ... that may be a debtor under the chapter under which such case is commenced."

Subdivision (b) provides:

"An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability ...

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims."

■ The alleged debtors do not contend that the requirements of § 303(a) and 303(b) are not met in this case. Because there are fewer than twelve creditors holding unsecured claims, and because Al's Heating holds a claim in excess of $5,000, it may commence an involuntary case without being joined by other creditors. Further, it is irrelevant for the purposes of § 303(b)(2) that its claim is disputed, because even though the claims required under § 303(b)(2) must be "not contingent as to liability" pursuant to § 303(b)(1), it is well-settled that disputed claims are not "contingent" as that term is used in that subdivision and as is applicable to subdivision (b)(2). *See, e.g., In re B.D. International Discount Corp.,* 701 F.2d 1071, 1073, n. 2 (2d Cir.1983); *In re Tarletz,* 27 B.R. 787, 789 (Bkrtcy.D.Colo.1983) (disputed claims are not contingent claims); *In re All Media Properties, Inc.,* 5 B.R. 126, 133, 2 C.B.C.2d 449, 456 (Bkrtcy.S.D.Texas 1980) *aff'd,* 646 F.2d 193 (5th Cir.1981) (a contingent claim is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.")

There is also no issue in this case as to whether the court should abstain pursuant to 11 U.S.C. § 305(a)(1), which provides for abstention if "the interests of creditors and the debtor would be better served" thereby. The alleged debtors have specifically refrained from asking for abstention because, if they are successful on this motion, they may ask for costs, attorney's fees, and damages to the extent they are available under section 303(i)(1) and (2) of the Code. (T., p. 15, *ll.* 9–14) These would not be available if this court abstained.

The issue in this case, then, is whether the requirement of section 303(h) is met. That section provides:

"(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was

filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due ..."

The question, then, is whether the alleged debtors are "generally not paying [their] debts as [they] become due."

The meaning of that phrase has given the courts a great deal of difficulty, in part because of the potential tension between section 303(b)(2), allowing only one creditor to file an involuntary petition, and the language of section 303(h), referring to "debts," and in part because of the unenlightening legislative history of this phrase. *See In re B.D. International Discount Corp., supra* at 1075–76. Because this specific statutory language arose for the first time in the Congressional conference committee, and because there was no conference committee report, *see id.,* there is no definitive legislative gloss on these words.

The alleged debtors contend that the words cannot apply in a case such as this one, where they are not winding up their affairs, where the only past-due debt is a disputed one to a single creditor, where they are clearly solvent, and where the petitioning creditor has alleged neither that it has exhausted its remedies elsewhere nor that they may be engaging in illegal activity that the Bankruptcy Courts are particularly suited to deal with, such as fraudulent conveyances or preferences. The petitioning creditor, on the other hand, maintains that when debtors are failing to pay debts which represent a major portion of their indebtedness, and where a large portion of these debts is unquestionably owed, the debtors are generally failing to pay their debts, and relief in this court is available notwithstanding the solvency of the debtors, the availability of other forums, or the absence of allegations of wrongdoing such as preferences or fraudulent conveyances. Moreover, the petitioning creditor argues,

summary judgment on that issue is inappropriate in this case because the papers reflect genuine disputes about the amount of the debt, when the debt is due, and whether the debtors are "generally not paying their debts."

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "The moving party has the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the material before the court will be "viewed in the light most favorable to the opposing party." *Id. See also, U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

It must be emphasized, however, that "[s]ummary judgment cannot be defeated by the vague hope that something may turn up at trial." *Modern Home Institute, Inc. v. Hartford Accident and Indemnity Co.,* 513 F.2d 102, 110 (2d Cir.1975), *quoting Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969). *See also First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–290, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968). The Rules specifically provide:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

F.R.C.P. 56(e)

It must also be emphasized that the disputed issue which the papers must show

must be a legally relevant dispute, that is, one which would affect the outcome of the case: a showing of innumerable factual disputes will not defeat a motion for summary judgment if, no matter how these disputes are resolved, the non-moving party could not prevail as a matter of law. *Cf. Burroughs v. Metro-Goldwyn-Mayer, Inc.,* 683 F.2d 610, 624 (1982). In short, a *material* fact must be disputed.

To determine what facts are material requires a clarification of the legal meaning of the phrase "generally not paying [their] debts."

There appears to be no reported case in which a court has considered that phrase in which the facts parallel those in this case: a clearly solvent debtor not paying a large debt, much of which is concededly owed, that is not delinquent in any other obligations. Certain general principles have been established in the cases, however, to guide courts in construing the "generally not paying" language of § 303(h). One court has maintained:

> "The new test for involuntary petitions was adopted not to restrict and limit the involuntary process but was included to allow more flexibility ... [T]he court believes that generally not paying debts includes regularly missing a significant number of payments to creditors or regularly missing payments which are significant in amount in relation to the size of the debtor's operation. Where the debtor has few creditors the number which will be significant will be fewer than where the debtor has a large number of creditors. Also, the amount of debts not being paid is important. If the amounts of missed payments are not substantial in comparison to the magnitude of the debtor's operation, involuntary relief would be improper."

*In re All Media Properties, Inc.,* 5 B.R. 126, 142–43, 2 C.B.C.2d 449, 468 (Bkrtcy.D.Colo. 1980); *See In re Tarletz,* 27 B.R. 787, 789 (Bkrtcy.D.Colo.1983) (courts must consider "the number of debts, the amount of delinquency, the materiality of nonpayment and the nature of the debtor's conduct of his financial affairs"); *accord, In re Reed,* 11 B.R. 755, 759–60 (Bkrtcy.S.D.W.Va.1981); *see also In re Winsum Sports, Inc.,* 14 B.R. 389, 5 C.B.C.2d 248, 251–52 (Bkrtcy.D.Conn. 1981); 2 *Collier on Bankruptcy,* ¶ 303.12[1] at 303-47—303-48 (15 ed.) ("Although the precise scope and meaning assigned to the term 'generally not paying' are left to the courts, it is clear that a court must find more than a prospective inability by the debtor to pay only a few of his debts, and more than a past failure to pay a few liabilities. It is doubtless intended that a court should properly consider both the number and amount of debts in determining whether failure to pay is, in fact, 'general' ").

In addition to establishing general guidelines to assist in the determination of whether a debtor is "generally" paying its debts, courts have confronted the thorny problem of whether disputed debts should be included in the calculation of whether a debtor is "generally not paying" under § 303(h). *See, e.g., B.D. International Discount Corp. v. Chase Manhattan Bank, N.V., (In re B.D. International Discount Corp.),* 701 F.2d 1071 (2d Cir.1983); *In re Covey,* 650 F.2d 877 (7th Cir.1981); *In re Tarletz,* 27 B.R. 787 (Bkrtcy.D.Colo.1983); *In re Karber,* 25 B.R. 9 (Bkrtcy.N.D.Tex. 1982); *In re Galanis,* 20 B.R. 590, 6 C.B.C.2d 932 (Bkrtcy.D.Conn.1982); *In re Blaine Richards & Co., Inc.,* 16 B.R. 362 (Bkrtcy.E. D.N.Y.1982); *In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 4 C.B.C.2d 1335 (Bkrtcy.S. D.Fla.1981); *In re Nar-Jor Enterprises Corp.,* 6 B.R. 584 (Bkrtcy.S.D.Fla.1980); *In re All Media Properties, Inc.,* 5 B.R. 126, 2 C.B.C.2d 449 (Bkrtcy.S.D.Tex.1980); *In re Hill,* 5 B.R. 79 (Bkrtcy.D.Minn.1980). The courts that have confronted this problem have reached no unanimity as to how disputed debts should be treated. *Compare, e.g., B.D. International Discount Corp. v. Chase Manhattan Bank, N.V., supra,* at 1077 (declining to adopt the Seventh Circuit's test for including disputed debts in

the calculation of whether a debtor is generally paying his debts) and *In re Covey, supra,* (establishing a three-part test for determining when disputed debts should not be considered for § 303(h) purposes). On one point, however, the courts have agreed: disputed debts should not be treated the same as undisputed debts if the dispute is in good faith. Just a few months ago, the Second Circuit Court of Appeals expressed the feeling of many courts that have examined the issue when it stated, "we have difficulty in believing that Congress intended that a debtor should be found to be generally not paying its debts as they become due under § 303(h)(1) ... when the claim is subject to serious dispute." *B.D. International Discount Corp., supra,* at 1076.

The Seventh Circuit in considering the problem determined that "there cannot be any absolute rule" *Covey, supra,* at 883, as to whether to include disputed debts in the calculation of debts not being paid, but stated that generally disputed debts can be included and that:

"disputed debts should be excluded from the 'generally paying debts' determination only under the following circumstances: 1) the dispute is whether any claim exists, not merely regarding the amount of a claim; 2) the dispute can be examined without substantial litigation of legal or factual questions; and 3) the interests of the debtor in defeating an order of involuntary bankruptcy outweigh creditors' interests in achieving a somewhat more rapid determination of the involuntary bankruptcy question."

*Id.* at 883–84. *See also, In re Tarletz,* 27 B.R. 787, 791 (Bkrtcy.D.Colo.1983) (repeating *Covey* language while excluding debts subject to a good faith dispute from its calculations); *In re Karber,* 25 B.R. 9, 15 (Bkrtcy.N.D.Texas 1982) (applying *Covey* criteria to dismiss an involuntary petition, *id.* at 14–15, while noting that "[t]here is persuasive authority that where a debtor fails to pay a debt that is subject to a bona

fide dispute that debt should not be considered one which is not being paid as it becomes due for the § 303 analysis," *id.* at 14); *In re Blaine Richards & Co., Inc.,* 16 B.R. 362, 365 (Bkrtcy.E.D.N.Y.1982).

Other courts have taken a more restrictive approach than did the *Covey* court to the inclusion of disputed debts in the § 303(b) calculation, and have articulated the rule that debts subject to a bona fide dispute generally will not be considered to determine whether a debtor is "generally paying" its debts. The court in *In re All Media Properties Inc.,* 5 B.R. 126, 2 C.B.C.2d 449 (Bkrtcy.S.D.Tex.1980) stated, "where a debtor fails to pay a debt which is subject to a bona fide dispute that debt should not be considered a debt which has not been paid as it became due. There is no apparent reason why a debtor should have to pay disputed debts to avoid the entry of an order for relief." *Id.* at 144, 2 C.B.C.2d at 469–70. *See also, In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 4 C.B.C.2d 1335 (Bkrtcy.S.D.Fla.1981) ("failure to pay several claims, disputed in good faith, does not prove that the debtor is generally not paying its debts as they become due," 13 B.R. at 100, and where all the debts of the petitioning creditors are disputed in good faith, an involuntary petition must be dismissed, *id.*); *In re Nar-Jor Enterprises Corp.,* 6 B.R. 584 (Bkrtcy.S.D.Fla.1980) (where the petitioning creditor contends that the alleged debtor owes unpaid sales taxes to the state and money to him but admittedly has no other debts, the petition must be dismissed since "there is a real, and not illusory, dispute between the petitioning creditor and the [alleged] debtor." *id.* at 585). *Cf. In re Hill,* 5 B.R. 79, 83 (Bkrtcy.D. Minn.1980) (in considering whether a person is "generally paying his debts," a court "must accommodate to the possibility individual or particular debts may remain unpaid because they ... are simply for some legitimate reason disputed," but a debt will not be considered to be subject to a legitimate dispute when there is an appeal pending in an action on the debt which resulted

in partial summary judgment for the creditor and which has resulted in no favorable judgment or ruling at any stage of the proceeding for the debtor); *cf. B.D. International Corp. v. Chase Manhattan Bank, N.V., supra* at 1076 (dictum).

A second difficulty the courts have confronted is whether an alleged debtor can be deemed to be generally not paying its "debts" when there is only one debt. Regarding this question there is greater unanimity than on the question of the inclusion of disputed debts: the courts have for the most part agreed that "in the ordinary case there can be no order for relief with no more proof than mere failure to meet liability to a single creditor," *In re 7H Land & Cattle Co.,* 6 B.R. 29, 31, 2 C.B.C.2d 554, 557 (Bkrtcy.D.Nev.1980), and have imposed special tests for such circumstances. In *7H Land & Cattle, supra,* the court held that where there was a single large creditor claiming an obligation due of over one million dollars, that creditor could be successful only if it showed "either (1) an exceptional case of a debtor with a sole creditor who would otherwise be without an adequate remedy . . . or (2) a showing of special circumstances amounting to fraud, trick, artifice, or scam." *id.* at 34, 2 C.B.C.2d at 560. *Accord In re Arker,* 6 B.R. 632, 636, 3 C.B.C.2d 121, 126 (Bkrtcy.E.D.N.Y.1980) (dictum). Applying this emerging rule that when there are "special circumstances" the failure to pay a debt to one creditor can provide the grounds for sustaining an involuntary petition under § 303(b), my colleague, Judge Goetz, has held that a motion for summary judgment to dismiss a petition could not be granted even though it was contended there was only one creditor because the evidence revealed the possibility "that preferences are present here which can only be undone in the bankruptcy court." *In re Blaine Richards & Co., Inc.,* 16 B.R. 362, 366 (Bkrtcy.E.D.N.Y.1982); *cf. In re Karber,* 25 B.R. 9, 11, n. 1, 14–15 (Bkrtcy.N.D.Tex.1982) (dismissing involuntary petition where the court concluded that the alleged debtor had only one disputed debt, which was claimed to be $172,-942.89); *but cf. In re Hill,* 5 B.R. 79, 82–83, 2 C.B.C.2d 646, 650 (Bkrtcy.D.Minn.1980) (one large disputed debt which "constitutes . . . an overwhelming portion of the total [debt]" can lead to a determination that a debtor is "generally not paying" its debts, when the alleged debtors have been unsuccessfully asserting defenses to the debt in state court and where an appeal by the debtors is pending on that action) (dictum).

■ I support the hesitancy of courts to find that an alleged debtor is "generally not paying" its debts where there are only debts which are subject to a good faith dispute or when there is only one debt, even if it is a large one. "The Bankruptcy Court was not designed or intended to be the forum for trying isolated disputed claims," *In re Nar-Jor Enterprise Corp.,* 6 B.R. 584, 586 (Bkrtcy.S.D.Fla.1980), nor is it "a substitute for customary collection procedures," *In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 100, 4 C.B.C.2d 1335, 1336. Not only must a court hesitate to assert jurisdiction in a case such as the one before this court because "the use of the bankruptcy court as a routine collection device would quickly paralyze this court," *id.* at 101, 4 C.B.C.2d at 1336, and because the phrase "generally not paying . . . debts" does not by its plain meaning appear to apply to one disputed debt, *see Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184–1185, 43 L.Ed.2d 469 (1975); *Banks v. Chicago Grain Trimmers Association,* 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); *Minor v. Mechanics Bank of Alexandria,* 26 U.S. (1 Pet.) 46, 64, 7 L.Ed. 47 (1828), but also because the consequence of having debts liquidated in this court might be to shift the burden of proof on the validity of the claim, *see* Weintraub and Resnick, *Bankruptcy Law Manual,* ¶ 5.05, p. 5–9 ("The mere filing of the proof of claim or interest constitutes prima facie evidence of its validity and amount") or deprive the alleged debtor of a jury trial, *see id.,* ¶ 6.05, pp. 6–16—6–17. These concerns are particularly compelling in a case

with a clearly solvent debtor because, being solvent, the debtor cannot have made voidable preferences, *see* 11 U.S.C. § 547(b)(3) (establishing insolvency as a necessary criteria for a voidable preference), or have been engaged in certain fraudulent transfers, *see* 11 U.S.C. § 548(a)(2)(B)(i).

■ Moreover, basic principles of statutory construction compel this court to dismiss the petition. Faced with ambiguous language in a recently enacted statute, a court should start with a consideration of the basic purposes underlying it and attempt to harmonize these purposes with the overall statutory scheme if such harmony can be achieved without doing violence to specific words of the ambiguous provision. The major purposes of the bankruptcy laws are generally agreed to be to give the debtor a fresh start and to achieve equality among creditors. *Burlingham v. Crouse,* 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57 L.Ed. 920 (1913); *Pirie v. Chicago Title & Trust Co.,* 182 U.S. 438, 449, 21 S.Ct. 906, 45 L.Ed. 1171 (1901); *In re Blount,* 142 F. 263, 265 (E.D.Ark.1906); *In re Arker,* 6 B.R. 632, 636, 3 C.B.C.2d 121, 127 (Bkrtcy.E.D.N.Y. 1980) ("the purpose of an involuntary proceeding . . . is to secure an equitable distribution of the assets of the alleged debtor among all his creditors"). Neither of these purposes could be served in this case, where there is neither a need for a fresh start nor any allegation of inequitable distribution of the alleged debtors' assets.

In these cases at bar, the alleged debtors are solvent, they have one creditor who is not being paid, and that creditor's debt is subject to a bona fide dispute. These facts are either conceded or established by affidavits which the creditor makes no attempt to refute. *See* F.R.C.P. § 56(e). After extensive discovery, the creditor makes no allegation of fraudulent transfers, preferences,

scam or trick which could be rectified by the intervention of this court. To claim that the alleged debtors have sold properties without paying the entire amount due to the creditor is only to allege breach of contract. The disputes over the amount of the debts and the time for payment are not material to this motion for summary judgment, because this motion can be granted even if I assume that I would find for the creditor on those issues. There is no dispute as to the material facts that lead me to conclude that the alleged debtors are entitled to judgment as a matter of law. I do not, in short, believe that a debtor should be "confronted with the Hobson's choice of either paying a debt he does not deem himself to owe or be forced into involuntary bankruptcy," *In re Blaine Richards & Co., Inc., supra,* at 365, in a case such as this.

In view of the foregoing, the involuntary petitions for relief in both cases are dismissed.

Since the alleged debtors have indicated that if they are successful on these motions, they propose to request an award of costs, attorney's fees and damages to the extent they are provided for in section 303(i) of the Code, 11 U.S.C. § 303(i), a hearing is scheduled for July 19, 1983 at 2 p.m. to determine whether they are appropriate in this case.

IT IS SO ORDERED.