**In re William BROSHEAR, Debtor.**

**Bankruptcy No. 1–90–03925.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Jan. 10, 1991.

Carl Morgenstern, Hamilton, Ohio, for debtor.

Richard J. Valleau, Cincinnati, Ohio, for Dapper Co.

John A. Schuh, Cincinnati, Ohio, for CBS.

Charles Caldwell, Asst. U.S. Trustee, Cincinnati, Ohio.

### DECISION ON MOTION OF CINCINNATI BUILDERS SUPPLY COMPANY

BURTON PERLMAN, Chief Judge.

This is an involuntary bankruptcy case originally commenced by a single creditor but subsequently joined in by two additional creditors. The case was dismissed upon agreement between the petitioning credi-

tors and the debtor. To initiate the dismissal, petitioning creditor John W. Dapper Company filed a motion. That motion included the following statements:

6. As the October 29 hearing date approached, the Debtor began to aggressively pursue a settlement with the petitioning creditors, particularly Dapper.

7. Dapper informed the Debtor that it would not participate in any settlement that did not include satisfactory arrangements to pay Hough and Penley Plumbing & Excavating, Inc., the creditors who joined in the Involuntary Petition.

8. Dapper has incurred substantial legal fees during the course of this litigation and other litigation to attempt to collect the debt owed by the Debtor.

9. The Debtor, Dapper, and the other petitioning creditors have agreed that dismissal of the Involuntary Petition is in the best interests of the Debtor and his creditors, on the following terms:

a) James E. Hough and Penley Plumbing & Excavating, Inc. shall be paid in full the respective amounts of their claims: $500 and $2,000;

b) Dapper shall be granted mortgages on warehouse property and two houses under construction owned by insiders of the Debtor, with such mortgages to secure a promissory note executed by the Debtor in the amount of $11,675, consisting of Dapper's claim in the amount of $6,384 plus legal fees; and

c) Dapper shall file this Motion to Dismiss the Involuntary Petition.

10. Dapper is aware that the Debtor is attempting to pay certain of his creditors payments called for in various settlement agreements. Dapper believes that bankruptcy proceedings might interfere with such payments and agreements, and that this result is not as equitable as allowing the Petition to be dismissed and the payments to continue.

11. Dapper is also aware that the Debtor, if the Involuntary Petition is not dismissed, may suffer adverse consequences to his construction business that could prevent the payment of any debts.

Dapper believes that this result may not be in the best interests of the Debtor or his creditors.

In addition to these forthright statements in the motion, pursuant to 11 U.S.C. § 303(j) Dapper gave notice of the motion to dismiss to a list of creditors which were said to be all of the creditors of debtor. No objections being received within the objection period, the court entered an order of dismissal on November 28, 1990.

Entry of the order of dismissal occurred, though the day before, Cincinnati Builders Supply Company (hereafter "CBS") filed a motion requesting additional time to object to the dismissal. In its memorandum supporting its motion, CBS said that it is a plaintiff in a law suit against this debtor seeking to recover $15,000.00 on an account for building materials. In its motion, CBS says further:

2. Notwithstanding the fact that William Broshear disputes the debt of CBS, CBS says that it is a creditor of the debtor within the meaning of 11 U.S.C. § 101(9)(A) and § 101(4)(A).

3. CBS says that when the debtor filed his list of creditors contained in his answer filed pursuant to Bankruptcy Rule 1003(b), the claim of CBS was not listed and thus CBS did not receive notice of the motion of John W. Dapper Co. to dismiss the involuntary petition. CBS's present knowledge of the case is independent of all parties and occurred by chance when CBS's counsel happened upon Broshear's name in the Alpha index of this Court's records.

4. Upon investigation of the file, it would appear that William Broshear has transferred money[1] and or interests in real property[2] in order to secure the withdrawal of the petition for an involuntary adjudication by the three creditors. It would further appear that if the claim of CBS were allowed against William Broshear, such transfers would be in clear preference of the three petitioning creditors and in derogation of CBS's claim and the claims of other unsecured creditors, some of whom may not have

any notice of the events in this case as was the situation with CBS.

5. CBS says that the dismissal of the case is targeted to the individual benefit and preference of the three petitioning creditors and that the integrity of Title 11 in providing an orderly scheme for the distribution of debts is challenged by the proposed dismissal.

6. Because CBS's claim has been disputed by William Broshear, CBS is not in a position to join or independently petition the Court for an involuntary adjudication. CBS nevertheless states as a creditor that dismissal of the within case would not be in its best interests and seeks adjudication of the case as a Ch. 7 and the appointment of a Trustee to make appropriate inquiry into the debtor's affairs.

7. Alternatively CBS desires sufficient time to conduct a Rule 2004 examination of the debtor to determine the existence of other creditors who may have been left off of the debtor's list, to interview those listed and not listed, and to thereafter make a more formal objection to the motion of Dapper for dismissal.

---

1  It appears as though Penley Plumbing and James Hough have been paid money for the withdrawal of their involuntary petition.

2  It appears as though Dapper has received a mortgage on real estate which secures to be paid a $6,384 claim plus attorney's fees approximating $5,000 in order to obtain their motion for dismissal of the case.

The matter then came on for hearing, at which time the court was informed that CBS was not given notice of the dismissal, apparently because only those creditors who were qualified to be petitioners in an involuntary case were included in the service list. For purposes of the hearing, the court treated the motion of CBS as one seeking to have the dismissal order vacated. An issue urged by debtor in opposition to the present motion was that CBS "has no standing to intervene in this bankruptcy case or request a Rule 2004 examination inasmuch as they are not a creditor as defined by 11 U.S.C. § 303(d)(1) because their claim is the subject of a bona fide

dispute." Evidently the key issue in that dispute is that it is the contention of the defendant there, debtor here, that any debt owed to CBS is not owed by him personally, but rather is the debt only of a corporation, Broshear Properties, Inc.

1.  Standing.

CBS is frank to admit that it could not be a petitioning entity in an involuntary case against this debtor because its claim is in bona fide dispute. It says that it is nevertheless a creditor with standing to object to the dismissal because (1) it is a creditor within the meaning of 11 U.S.C. § 101(9), and (2) the settlement made by debtor with the petitioning creditors is prejudicial to it in the event that it gets a judgment in its state court litigation. Debtor, to the contrary, contends that only a creditor which could join in an involuntary petition has the standing to question the dismissal of an involuntary petition.

Section 303 itself provides an answer to the question thus raised, and leads us to resolve the issue in favor of CBS. Simply stated, at § 303(b) those who may file an involuntary petition are referred to as "entities", not as creditors. The word "creditors" is used at § 303(j) with respect to who must be given notice of a proposed dismissal. It is reasonable to believe that this difference in terminology was intended, that creditors as defined at § 101(9) were to be given notice, and that such creditors would have the right to question any dismissal. See *In re Rajneesh Neo-Sannyas International Commune*, 59 B.R. 49, 51 (Bankr.D.Or.1986).

2.  Right to Relief.

Having established that CBS has the right to raise an objection to dismissal, we next must deal with the merits of their objection. Serious policy questions are at stake. It is not acceptable to initiate an involuntary bankruptcy in furtherance of debt collection activities by a creditor or creditors against a debtor. To allow such behavior would inundate the bankruptcy system with bankruptcy cases which bankruptcy was not designed to handle. *In re*

*SBA Factors of Miami, Inc.*, 13 B.R. 99, 101 (Bankr.S.D.Fla.1981). In an exhaustive and informative review of the history of the law of involuntary bankruptcy, Judge Martin Bostetter in *In re Caucus Distributors, Inc.*, 106 B.R. 890 (Bankr.E.D.Va.1989), at p. 898, makes reference to the historic mission of involuntary bankruptcy to provide creditors with a means of assuring equal distribution of a debtor's assets among his creditors. See also *In re Cordova*, 34 B.R. 70, 72 (Bankr.D.N.Mex.1983); *Matter of Goldsmith*, 30 B.R. 956, 964 (Bankr.E.D.N.Y.1983).

■ In this case, the debtor collection efforts were successful, for the creditors involved have secured satisfaction for their claims in their agreement with the debtor to dismiss the petition. This arrangement regarding the dismissal violates the policy of 11 U.S.C. § 303(j) as may be ascertained from the legislative history. The following may be found therein:

> The purpose of the subsection is to prevent collusive settlements among the debtor and the petitioning creditors while other creditors, that wish to see relief ordered with respect to the debtor but that did not participate in the case, are left without sufficient protection. (H.R. Rep. No. 595, 95th Cong., 1st Sess. 324 (1977); S.Rep. No. 989, 95th Cong. 2nd Sess. 35 (1978)), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5821, 6280.

We reach the following outcome in the present motion. It is dictated because what we have here is pursuit of a debtor by a creditor for the purpose of collecting his debt utilizing the device of an involuntary bankruptcy petition, the device demonstrably having been successful because it resulted in an agreement by which the petitioning creditors were satisfied. At the same time, there is a concern in involuntary cases that they not cause the demise of going business concerns unnecessarily. The present motion will be overruled PROVIDED that the benefits to the petitioning creditors, Hough, Penley Plumbing & Excavating, Inc., and John W. Dapper Company, described in the motion of Dapper as conditions to the agreement to dismiss the petition, are reversed, rescinded, and/or repaid within twenty (20) days from the date of this order. Within such 20–day period, written evidence of such reversal, rescission and/or repayment is to be furnished to the court. If this court is not advised that such actions have occurred, the order of dismissal will be vacated and the motion of CBS granted.